32 337<br>
41 255

[No. 4688. Decided July 24, 1903.]

F. W. WUSTHOFF et ux., Appellants, v. ALICE SCHWARTZ, Respondent.

LANDLORD AND TENANT — EVICTION — DAMAGES.

Actual force is not necessary to effect an eviction, but any interference with the tenant's beneficial enjoyment is sufficient.

SAME — ESTOPPEL.

Where the landlord commenced to make repairs about the middle of May, the tenants making no objection, and paying rent in advance on June first for one month, and where the repairs continued during the month of June, becoming more and more troublesome, until the entire basement was torn up, the porches became dangerous, the back entrance was nailed up and the front steps were about to be torn down, which would have effectually prevented all passing to and from the house, at which time (June 17) the tenants moved out, the landlord was guilty of an eviction, and neither the silence of the tenants, nor the payment of rent for June after the commencement of the repairs would estop them from claiming the damages suffered by the eviction.

SAME — AGENCY — LIABILITY FOR ACTS OF AGENT.

Upon an eviction by the making of repairs, interfering with the tenants' quiet enjoyment of the premises, the landlord is not relieved from liability by the fact that the work was done by contractors who had been instructed not to proceed until the tenants had given consent, as they were agents of the landlord, and he was liable for their acts done within the apparent scope of their authority.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Reversed.

22-32 WASH.

*Fred H. Peterson,* for appellants.

*Robert F. Booth* and *Root, Palmer & Brown,* for respondents:

Appellants are estopped by their silence from complaining, or denying that they consented to the repairs. 1 Herman, Estoppel, p. 6; Bigelow, Estoppel (4th ed.), p. 546; Bishop, Contracts (Enlarged ed.) § 1299; *Doe v. Allen,* 3 Taunt. 78, 80; *Pickard v. Sears,* 6 Ad. & E. 469; *Freeman v. Cooke,* 2 Exch. 654; *Stevens v. Dennett,* 51 N. H. 331-6; *Blair v. Wait,* 69 N. Y. 116; *Doe v. Pye,* 1 Esp. 366; *Patton v. Barnett,* 12 Wash. 576; *Lynch v. Richter,* 10 Wash. 487; *Roeder v. Fouts,* 5 Wash. 135; *Gregg v. Von Phul,* 1 Wall. 174-282 (17 L. ed. 536).

The opinion of the court was delivered by

HADLEY, J.—Appellants brought this action to recover damages by reason of an alleged eviction from a tenement occupied by them as tenants under respondent. The complaint alleges that appellants paid the rent for the premises each month in advance, and that the same was paid, including the whole of the month of June, 1901; that at divers times between May 10, 1901, and June 17 of the same year the respondent, without permission or consent of appellants, wilfully and without cause wrongfully entered upon said premises, and proceeded to tear down portions of the building by taking away the stairway in the rear thereof and by taking out the toilets and water pipes, thus making the premises entirely useless and unsanitary for dwelling purposes; that she caused the house to be raised, tore off the front steps, and disconnected the sink, thereby rendering the building not only useless as a dwelling, but also dangerous to health; that by reason thereof the appellant Anna Wusthoff became seriously ill

from sewer gas and from the unsanitary condition of the building; that appellants were evicted from the premises by reason of said acts of respondent, and, on June 17, 1901, were forced to leave said house, and find another dwelling place. The expense of moving, of the sickness of said Anna Wusthoff, and the higher rent required to be paid for another dwelling place are alleged as items of damage. The answer avers that about May 10, 1901, respondent notified appellants that she desired to make certain repairs upon the premises, and that they gave their free and full consent that she might enter thereon for said purpose; that, acting under such permit, she did enter thereon and made the repairs, but that in so doing she did not make said building unsanitary or dangerous. The cause was tried before a jury, and, when the appellants' evidence had all been introduced, respondent challenged the sufficiency of the evidence, and moved for a judgment in her favor. The motion was granted. In ruling upon the motion the court said, in substance, that although, under the testimony, it clearly appeared that damages had been shown, yet it also equally clearly appeared that whatever acts were done by respondent were done with the constructive consent and acquiescence of appellants. Judgment was entered dismissing appellants' action, and they have appealed therefrom.

Several alleged errors are assigned, but we will discuss only the assignment that the court erred in granting the motion to withdraw the case from the jury and in entering judgment for respondent. The testimony, as it stood, showed that the acts which it is claimed amounted to an eviction commenced on May 13, on which date the water closets and sewer pipe were taken out of the house. On June 3, the whole basement was

torn up, including the floor. Appellants were required
to move their coal, wood, and tools, and some of these
they were compelled to store in the kitchen upstairs.
On June 4 the railing was torn from the front porch,
which made it dangerous for the children of the family.
The porch was four or five feet above the ground, and
the family consisted of ten persons, the two appellants
and their children, eight in number. On June 11 the
entrance stairway at the rear of the house, consisting
of eighteen steps and three platforms, was torn down,
·and the rear door was nailed fast, thus preventing in-
gress and egress from the rear. On June 15 prepara-
tions were made to tear down the front steps, the re-
moval of which would have effectually prevented all
passing to and from the house. Appellant Anna Wust-
hoff says she then begged the carpenter to leave the
steps, and told him they would move out on June 17
if they could get another house, and if not her husband
would buy a tent. The steps were then left undis-
turbed, and on June 17 appellants moved out of the
house. After the closets were torn out, respondent's
agent attempted to get appellants' written consent that
·the repairs might be made. This was refused. Appel-
lants testified that they never gave permission to any
one to do any of the acts above stated. They appear
to have said nothing by way of consent or of objection
or remonstrance, but quietly endured what was going
on until the front steps were about to be removed. The
rent was fully paid for the entire month of June.

It would seem that, if an eviction can be effected
without the use of actual expulsive force, the above
facts were sufficient to constitute such an eviction. It
·is a well·established rule that actual force is not necessary

to effect an eviction in law, but that any interference by the landlord with the full and substantial enjoyment by the tenant of the thing leased amounts to an eviction. In *Hoeveler v. Fleming,* 91 Pa. St. 322, the court observed:

"The modern doctrine as to what constitutes an eviction is, that actual physical expulsion is not necessary, but any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law."

In *Edmison v. Lowry,* 3 S. D. 77 (52 N. W. 583, 17 L. R. A. 275, 44 Am. St. Rep. 774), the following instruction was approved:

"As to the matter of eviction. It is not necessary there should be any act of a permanent character, but any act which has the effect of depriving a tenant of the free enjoyment of the premises, or any part thereof, or any appurtenances pertaining to these premises, must be treated as an eviction; and I charge you that any act of the plaintiffs which has deprived the defendant of the enjoyment of the free right pertaining to and belonging to him as tenant may be treated as an eviction."

To the same effect see the following: *Coulter v. Norton,* 100 Mich. 389 (59 N. W. 163, 43 Am. St. Rep. 458); *Dyett v. Pendleton,* 8 Cow. 727; *West Side Savings Bank v. Newton,* 76 N. Y. 616; *Jackson v. Eddy,* 12 Mo. 209; *Skally v. Shute,* 132 Mass. 367; 3 Sutherland, Damages (2d ed.) § 848.

Under the rule followed by the above authorities the acts of the respondent amounted to an eviction unless those acts were waived by the consent of the appellants. There was no evidence whatever that appellants gave such consent, unless their silence shall be held to have amounted to consent. We do not think it should be so held. They may have patiently endured the first acts

of respondent not expecting a continuance of similar interruptions. These interruptions continued, however, during the remainder of the month of May. It is argued that, since they afterwards paid the rent for another rental period, namely, for the month of June, that they thereby waived the interruptions, and consented thereto. Whatever may be said of the effect of the payment of rent in its application to what was done before that time, the same argument cannot be applied to the conditions which followed in the month of June. It is not improbable that appellants may have hoped for a cessation of the troublesome interruptions from the beginning of the month of June, and that month stood alone as an independent rental period, which they had a right to regard as in no way connected with the period covered by the month of May. Having paid their rent, they at least had the right to expect peaceful and quiet enjoyment of the premises to the end of that period. But, as we have seen, they were not permitted to have such enjoyment. Acts were done by the landlord during the month of June that were wholly inconsistent with quiet enjoyment by the tenants, and these were continued until they could be no longer endured, when, with further threatened acts that would have rendered the building practically uninhabitable, appellants were compelled to leave it. As we view these conditions they clearly amounted to an eviction.

*Ralph v. Lomer,* 3 Wash. 401 (28 Pac. 760), is not inconsistent with the above conclusion. There the action was brought by the landlord to recover possession for non-payment of rent. As one defense the tenant set up a series of alleged acts of the landlord which covered a period of some months, during all of which time the

tenant had paid the rent and remained in possession.
He was still in possession when the cause was tried, and
was endeavoring to keep his landlord out. It was held
that, since he had paid the rent for each month covered
by the acts complained of, and retained possession up to
the time of the initiation of the action, he thereby
waived any claim for damages, and that he had not
been constructively evicted. In the case at bar, how-
ever, while it is true appellants had paid the rent in ad-
vance for the month of June, yet during that month the
further acts of the landlord were such that they were
forced to leave the premises, were actually evicted, and
they did not therefore waive damages.

Respondent further insists that it appears that the
work was to be done by contractors, and that they were
instructed by her not to begin it until appellants had
consented; that, if they did not get such consent, they
alone are responsible, and that she cannot be held lia-
ble for their misconduct. The contractors were, in any
event, the agents of respondent, and as such were author-
ized to do the work. There is no evidence that appel-
lants had notice that the contractors had disregarded
respondent's instructions. The agents were sent to the
premises to do the very things which they did. They
were done within the apparent scope of their authority,
and in the absence of any notice to appellants as to the
extent thereof. The acts therefore became, as to these
appellants, those of the principal. Respondent had ac-
cepted rent from appellants, which involved a covenant
on her part for the quiet enjoyment of the premises.
The duty therefore rested upon her to see that consent
was given before she gave even qualified authority to her
agents to enter upon the premises.

The judgment is reversed and the cause remanded, with instructions to the lower court to deny the motion of respondent for judgment, and to retry the cause.