[No. 14647.   Department Two.   July 26, 1918.]

A. L. PATTERSON, *as Commercial Market, Respondent,* v. F. M. JORDAN *et al., Appellants.*[1]

LANDLORD AND TENANT—LEASE — ABROGATION — EVICTION — DAM-AGES.  An agreement by a tenant, occupying part of a building, that a contractor might commence tearing down the building, and to vacate on a certain date, does not render the landlord or contract-or liable for damages as for an eviction, when an unanticipated rain damaged the tenant's goods during the work.

SAME — LEASE — ABROGATION — CONSIDERATION.  Under such an agreement where the landlord was preparing for the immediate erec-tion of a new structure for lease to the occupants, and the contractor refused to proceed until all tenants agreed to vacate, the reciprocal surrender of rights constituted a sufficient consideration.

ESTOPPEL—CONTRACTS.  A tenant who agreed to abrogate a lease so that the building may be torn down, is estopped to assert want of consideration, after the contractor acted on his promise and had proceeded to take down the building.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered October 17, 1917, upon findings in favor of the plaintiff, in an action in tort, after a trial on the merits to the court.   Reversed.

*Fogg & Fogg* and *Frank D. Nash,* for appellants.
*E. D. Hodge,* for respondent.

CHADWICK, J.—The appellants, Jordan and wife, are the owners of lots 3, 4, 5 and 6, in block 1108, located on the upper side of Market street, in Tacoma.   A build-ing which had been occupied as a skating rink and dance hall had been constructed on these lots.   The level of the floor was from ten to fifteen feet above the level of Market street.   The ground had been excavated under the building and stalls had been established there and along the sidewalk.   These were roofed over and

[1]Reported in 174 Pac. 454.

had been occupied as market places, the whole being known as the City Market of Tacoma. The respondent occupied the corner stall of the market under lease from month to month. In May, 1917, the city of Tacoma ordered the stalls along the sidewalk removed from the street in front of appellant Jordan's property. The result of this was to affect the desirability of the stalls as market places, and we take it that some of the tenants, and possibly the respondent, insisted that a new building be erected. At any rate, the appellant's agent procured the services of architects who prepared a plan for a new building. The plan required the excavation of the ground theretofore occupied by the main structure, and the tearing down of the stalls which had been erected thereunder. The agent negotiated with a contractor to do the excavating. At the time the agent was notified by his principals to have plans prepared, he went to respondent and asked him if he would want a regular notice to get out, or if he could get out in a few days, if they decided to put up a new building. Respondent told the agent that he would want sufficient time to get out and be located. The plans were completed about the 19th of June. The agent and the contractor met at the office of the architect to sign the contract. The agent, however, refused to sign at that time, saying that he would not sign until he had seen the tenants and made it certain that they would be able to get out, it being the then intention and desire of the parties to complete the excavation by the first day of July. The contract for excavating was sublet to appellant Denholm. The agent accordingly interviewed the tenants. All of them agreed to be out by the following Saturday night, June 23d. The testimony of the agent is as follows:

"I went in and saw Mr. Patterson and I told him that as we could not go ahead with the excavation, as

we first intended, by excavating through the center of the lots, as we thought we could do, because the contractor had told us that he could not work to advantage unless he had the whole frontage to work on, as he wanted to work his shovel across the face of the excavation; and I told him that in order for us to go ahead with the contract that it would be necessary for all tenants to vacate, and I had absolutely refused to sign the contract until I was absolutely assured by each of the tenants that they would be out on the 23d, because the building must be torn down by the first of the month in order for the excavation to commence.

"Mr. Patterson says, 'I don't know whether I can make it or not.' Well, I said, 'It is absolutely necessary; I want to know before I sign that contract.' He said, 'Are the other fellows going to be out?' I said, 'Yes, they have all agreed to be out on the 23rd.' He said, 'All right, I will, too.' Just as I was going out I says, 'A week's rent will be refunded to you.' "

The respondent's report of the conversation is "I told him that I would try to do so." On the morning of the 25th of June, respondent informed Denholm and respondent's agent that he would not get out of the building at the time that he had agreed to get out or had thought that he might get out. Denholm was upon the ground and ready to proceed with the work. He asked respondent if he cared if the roof was removed up to his place of business. He says that the respondent said "No, go to it." It does not seem to be seriously denied that respondent agreed that the subcontractor could carry on his work if the roof over his head was not interfered with. At any rate, respondent remained in the building until about the 10th day of July. Denholm, the subcontractor, commenced to tear down the building on June 25th. He entirely removed forty feet at the south end, and by Wednesday evening, June 27th, had torn away the superstructure of the building down to the skating rink floor. The roof over

the part of the building which was over respondent's place of business was not cut away. On the evening of the 27th, it rained and the water accumulating on the maple floor ran back into the north end of the building and seeped through into respondent's stall, damaging his goods to a very considerable extent.

The court below made findings allowing respondent the damage which he claimed to have suffered. The court found that there was no valid agreement made between the parties for a suspension of the lease, and that, for this reason, respondent was entitled to the protection of his lease to the end of his term, or up to the time of his voluntary removal. Counsel for respondent relies upon *Wusthoff v. Schwartz*, 32 Wash. 337, 73 Pac. 407, and *Bancroft v. Godwin*, 41 Wash. 253, 83 Pac. 189. The first case might be in point if it were shown that there was no permission to proceed with the repairs, but in this case we think the testimony preponderates in favor of the appellants. Respondent was willing to vacate and would have done so but for some trouble in procuring carpenters to properly prepare another room which he expected to occupy while the new building was being erected. In other words, the rule and its limitation is noted by Judge Hadley, who wrote the opinion. He says:

"Under the rule . . . the acts of the respondent amounted to an eviction unless those acts were waived by the consent of the appellants."

In the second case, it was charged that the remodeling of the building was done in a careless and unskillful manner. In the case at bar, respondent is not in a position to urge that the work was negligent or unskillfully done, for he had consented that the subcontractor be not interrupted in his work, but might remove that part of the building which was south of the room occupied by him. The contractor was engaged

in the performance of this work when the rains came. The rains were not anticipated by either party, and if they had been, the law would charge, under the record before us, the burden of anticipation to the respondent and appellants in equal degree. If the work of removal of the entire structure had been completed before it rained, that is, had the floor been removed along with the superstructure up to or near the line of respondent's stall, no damage would have resulted; for the damage did not come from the rain beating directly through the roof as respondent inferentially alleges in his complaint, but from the water accumulating on the floor of the building, which had been left exposed for many feet to the south of his south line.

Where parties have agreed that a certain thing shall be done, we do not understand that there is any rule of law that will make the one party an insurer against the action of the elements; nor do we think that the agreement to move, or the agreement to permit the razing of the building up to the part that was occupied by respondent, was void by the want of consideration. The agreement of respondent to get out on the 23d so that the work might go on, or as soon thereafter as it was possible for him to do so, which is the effect of his answer that he would "try to do so," he knowing of the intention of appellants Jordans' agent to sign a contract for the excavation and that he was preparing for the immediate erection of a new structure, was sufficient to sustain the contract to change the lease from a tenancy from month to month to a term expiring either on the 23d of June or from day to day thereafter. As said in *Engels v. Mitchell*, 30 Minn. 122, 14 N. W. 510:

"This was an agreement, in effect, that the tenancy should terminate on the day named, and, if valid, it changed the tenancy from one at will to one for a fixed

term, to end on that day. The only objection made to its validity is want of consideration to sustain it. At the time it was made, neither party could, without the consent of the other, terminate the tenancy before July 15th; could terminate it at that time only by giving notice required by statute. By the agreement each party yielded or gave up the right to hold the other for any time beyond the 15th of June, and this reciprocal surrender of rights constituted a consideration on each side for the agreement.''

Or, on the other hand, if it be said that there is no consideration sufficient to make a valid agreement to abrogate the lease, we think respondent is estopped to raise the question; for it is proved beyond the peradventure of a doubt that the subcontractor, Denholm, who is joined as a party in this action, and who, as we must assume, was not wilfully putting himself to the liability of a damage suit, did not undertake the removal of any part of the building until he thought at least that he had respondent's consent so to do.

''Where a third person is employed by the landlord with the consent of the tenant to make repairs or improvements to the demised premises, he will be liable to the tenant for injuries to his property on the premises resulting from negligence in doing the work.'' 16 R. C. L., p. 677, § 163.

Having, as we find from the testimony, consented to the work proceeding pending his removal, respondent's cause of action, if any, was for the negligent performance of the work. This he has neither pleaded nor proved. His complaint is drawn upon the theory that he was disturbed in his possession in violation of the term of his lease, contenting himself to stand upon the proposition, and as the lower court found, that ''there was no valid agreement for the vacation of the premises occupied to the 23d day of June or at any particular or specified date.''

· We find the evidence to preponderate in favor of the appellants upon the issue of consent, and that there was an agreement valid and sufficient in law for the abrogation of the lease from month to month.

The judgment of the lower court is reversed, with instructions to enter a judgment of dismissal.

MAIN, C. J., HOLCOMB, and MOUNT, JJ., concur.