[No. 14500. *En Banc.* January 21, 1919.]

## Rasmus Thompson, *Respondent,* v. R. B. Realty Company, *Appellant.*[1]

Landlord and Tenant (81, 88) — Constructive Eviction — Repairs—Consent of Tenant. A tenant cannot claim a constructive eviction by repairs and alterations undertaken at his request and for his benefit, especially where no claim was made until abandonment of the premises and suit brought; his remedy for delay or negligence being an action for damages.

Same (87)—Eviction—Acts of Landlord. The failure of a landlord while making repairs, to keep his promise to put in a new front does not amount to a constructive eviction.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 31, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for eviction. Reversed.

*Jesse A. Frye,* for appellant.

*Geo. Olson* and *William A. Gilmore,* for respondent.

Chadwick, C. J.—Plaintiff was a tenant of defendant under a term lease. He occupied a storeroom, eighteen feet in width, in a building containing other storerooms. In the spring of 1916, the building needed repairs. The floor sagged, and it had been repaired once or twice at the request of plaintiff. To make repairs of a permanent character it was necessary to go to considerable trouble and expense. Defendant desired to put a basement under the whole building. This could not be done economically without strengthening the walls of the building. Plaintiff needed basement room, and had spoken to defendant about it before defendant decided to make the improvement. It was understood that defendant should provide a space 20 x 20 feet in the basement and fit it for plaintiff's

[1]Reported in 177 Pac. 769.

conveniences, with a stairway leading from the main floor. The plans also contemplated a stairway leading from the main floor to the balcony. When the desires of the defendant were made known to plaintiff, he agreed that the work should go on. According to his own testimony, when disassociated from the concomitant circumstances, he said that defendant might proceed if it would pay him such damages as he might sustain. The space in the basement and the stairways were for the benefit of plaintiff and for the convenience of his business. It was necessary to make a stairway leading from the street into the basement. Defendant proposed to put this stairway under the storeroom occupied by plaintiff. To do this it would be necessary to cut off part of his frontage. He objected to this, and plans were drawn for a stairway under another part of the building. The plans for this stairway were O. K.'d by plaintiff on the 16th day of June. The work was begun about the 20th of March and progressed from day to day. It was thought that the work might be finished by the middle or last of May. In order to carry on the work it was necessary to put in heavy timber supports along the edge of the wall and to cut holes through the ceiling. Plaintiff says he was complaining all the time, and it is true that the work was not finished in the time that the parties had calculated that it might be done. But he gave no notice of his intention to quit. On the contrary, he continued his business up to the middle of May, when he bought a padlock and locked the door. He put a sign up in the window saying that he would reopen about the 15th of June. He later changed this sign, saying that he would open up on the 15th of June, and a third sign saying that he would open his place of business as soon as the work was finished.

Notwithstanding the fact that he had agreed that the work might go on, and that he had O. K.'d the plans on the 16th of June, which would call for a further interruption of his business, and still without notice to defendant, plaintiff consulted an attorney. A complaint was drawn about the 20th of June, charging a constructive eviction as of the 15th day of May, and praying for damages for injury to property, lost profits, and loss of the term, aggregating the sum of $18,500. On the second day of July, plaintiff moved his furniture and fixtures out of the building, and immediately thereafter served his complaint, which was the first notice defendant had of his intention to abandon the premises.

The case went to trial upon the general issues and some affirmative defenses. A jury returned a verdict for $3,333. Judgment was entered on the verdict, and this appeal follows.

The facts relied on to make a constructive eviction are set out in the complaint as follows:

"That on or about March 20th, 1916, appellant, through its servants and agents, began the excavation of a cellar under the leased premises, and as part of such excavation work, removed the supports of the building occupied by respondent, cut holes through the floor, placed and erected supporting timbers along the walls, ceilings and floors in the restaurant, rendering same unsightly, causing plaintiff great inconvenience and annoyance, that it became impossible to properly conduct respondent's restaurant business because of the loud pounding and other noises and the causing of dust to arise and flow into respondent's place of business, and physical disturbances occasioned by appellant's work and actions, causing the premises to be unattractive to prospective patrons, unfitted the premises for the purpose for which they were leased, interfering with the enjoyment of meals by patrons, frightening great numbers of them away, and finally

completely ruining respondent's business. That the matters and things alleged in this paragraph were done by appellant against the will and over the protest of respondent, and resulted in driving away respondent's patrons and the lessening of his business from day to day, from March 20th, 1916, until May 15, 1916, at which time his business became completely destroyed and ruined.''

A diligent reading of the record convinces us that plaintiff has not made out a case, either in fact or in law. Without going into greater detail than is hereinbefore set out, it is enough to say that, however annoying the work may have been to plaintiff, everything that was done up to the time he fixes as the time of eviction, and up to the time that he vacated the premises, was with his consent. The locking of the door and keeping of the keys, the posting of the notices, and the approval of the plans for the stairway as late as June 16, is so inconsistent with the present claims of the plaintiff that a recovery would voice the doctrine that a man can recover for his own wrong rather than for the invasion of some right.

Plaintiff makes something out of the fact that he was promised a new front, and he says defendant, after taking out the old front, ''slapped it right back up again.'' The parties do not entirely agree as to the understanding about the store front. It was repaired and the plate glass was put back. But, if plaintiff's testimony be taken as undisputed, it would not give a right of action as for a constructive eviction. In that event he would have had an action for such damages as might result to him under the contract that was made at the time the work was begun, and not otherwise.

Furthermore, and although we want to avoid disputed facts, we are convinced that, if the front was

not fixed to the entire satisfaction of plaintiff, it was because he did not keep his demands fixed in his own mind. To constitute a constructive eviction there must be an intention on the part of the landlord to evict.

"The intent with which the act is done may be an actual intent accompanying and characterizing the act, or it may be inferred from the act itself." *Skally v. Shute*, 132 Mass. 367.

"Where the issue is whether or not there was an eviction of a tenant, the intention of the landlord is material." 8 Ency. Evidence, 65.

The consensus of judicial opinion seems to be that the act must amount in law to a willful trespass, which is but another way of saying that an intent to regain possession must be shown, or that the landlord has so wantonly and willfully interfered with the quiet enjoyment of the tenant that an intent to oust will be presumed.

"Generally the question whether acts of the landlord in consequence of which the tenant abandons the premises amount to an eviction, is a question of law, and includes the question whether they constitute proof of the intent." *Skally v. Shute, supra.*

It follows, if a tenant consents to repairs, a recovery upon the grounds of a constructive eviction cannot be had.

"Acts on the part of the landlord to which the tenant assents cannot be asserted by the tenant as constituting an eviction. This self-evident principle has been applied in the case of an entry by the landlord, with the tenant's assent, to make repairs or improvements." Tiffany, Landlord and Tenant, p. 1289, § 185.

See, also, 24 Cyc. 1132, 1148; *Olson v. Schevlovitz*, 91 App. Div. 405, 86 N. Y. Supp. 834; *Ludington v. Seaton*, 32 Misc. Rep. 736, 66 N. Y. Supp. 497; *Schloss v. Schloss*, 137 Mich. 289, 100 N. W. 392.

This is especially so when no eviction is claimed until after the abandonment of the premises. We have had but recently to consider a case very similar to this one. In *California Building Co. v. Drury,* 103 Wash. 577, 175 Pac. 302, we say:

"There certainly had been no eviction by reason of the annoyance from rats, for, as we have seen, there had been no eviction claimed on that ground until after the vacation of the premises, and the respondent was entitled to an opportunity to remove the nuisance before the appellant would be entitled to vacate."

Having consented that the repairs should be made, plaintiff could not recover as for a violation of the terms of his lease, for his remedy, if any, was for negligent performance, and of that there is neither plea nor sufficient proof.

Plaintiff's principal reliance is in *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407, where the court accepted a definition of constructive eviction drawn by the supreme court of Pennsylvania:

" 'The modern doctrine as to what constitutes an eviction is, that actual physical expulsion is not necessary, but any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law.' " *Hoeveler v. Fleming,* 91 Pa. St. 322.

But in the case relied on, it is clearly pointed out that the work was done in wanton disregard of the rights of the tenant, and the court found as a fact that there was no consent, either actual or constructive. Faith is put also in the case of *Hotel Marion Co. v. Waters,* 77 Ore. 426, 150 Pac. 865, where the same doctrine is announced and the *Wusthoff* case is cited with approval. But in that case the interference which amounted to a constructive eviction was without the consent of the tenant. Nor was it contended that there

was any consent, the theory of the defense being that the acts complained of must have been of such permanent character as to deprive the tenant of the beneficial enjoyment of the premises. Neither of these cases, and cases announcing like conclusions, can be accepted as controlling, for, as we have said, plaintiff, by his own testimony, shows that the repairs were largely for his benefit and were undertaken with his consent and in the expectation that his place of business would be better suited for the uses intended. The defendant having no right of action upon the theory advanced in his complaint, it follows that all questions going to the damages and the measure of damages have become academic.

We have preferred to treat the case as if the eviction was laid as of July 2d, the date of abandonment, for no eviction can occur without giving up possession. Plaintiff retained possession, however, for six weeks after the time he says he was evicted, i. e., May 15, and if we were inclined to a technical holding, we might, without doing violence to any text or authority that has been called to our attention, hold that plaintiff had waived the acts complained of. 24 Cyc. 1130; 16 R. C. L. 686; *Barrett v. Boddie*, 158 Ill. 479, 42 N. E. 143, 49 Am. St. 172; *Schloss v. Schloss, supra.*

Reversed, and remanded with instructions to dismiss.

MACKINTOSH, HOLCOMB, PARKER, MOUNT, MITCHELL, and MAIN, JJ., concur.