## DAY v. SMITH, ET AL

(No. 1815; March 13, 1934; 30 Pac. (2d) 786)

516

For the plaintiff in error, there was a brief by *C. G. Cypreansen* and *W. B. Holliday*, both of Casper, and oral argument by *Mr. Holliday*.

For the defendants in error, there was a brief by *Durham and Bacheller* of Casper, and oral argument by *E. Paul Bachellor*.

*C. G. Cypreansen* and *W. B. Holliday* in reply.

BLUME, Justice.

This is a case brought by H. A. Day, plaintiff, against C. A. Smith and others, as defendants, for converting certain property and rights. A demurrer was filed to the amended petition and was sustained by the court. The plaintiff elected to stand upon his amended petition, a judgment was thereupon entered

dismissing the case, and from that judgment the plaintiff has appealed.

The amended petition alleges in substance the following: On or about May 15, 1928, plaintiff was the owner and in possession of a certain restaurant business at Casper, Wyoming, and of the personal property used in connection therewith; that the business was a going concern and was operated profitably; that it and the personal property and good will in connection therewith were of the reasonable value of ten thousand dollars; that the business was conducted on certain premises at Casper under a verbal lease, under which plaintiff was given the right to possess and occupy the premises indefinitely "and conditioned only that he pay the defendant C. A. Smith for the use and occupancy thereof the sum of two dollars daily;" that plaintiff paid this sum each day and (as may be gathered from the amended petition) up to and including the 15th day of May, 1928; that no person ever has terminated the plaintiff's lease; that some time after May 15, 1928, the exact date being unknown, the defendant C. A. Smith and his associates unlawfully appropriated the personal property and business aforesaid, and disposed of it for their own use and benefit; that by reason thereof plaintiff was damaged in the sum of ten thousand dollars, for which judgment is asked.

1. The first point to be determined is as to whether or not plaintiff is entitled to any damages by reason of the destruction of his business, resulting from the fact that the defendants took possession of the leasehold and the personal property mentioned. It may be said in that connection that it was admitted in open court on the oral argument herein that the plaintiff, on or about May 15, 1928, became insane; that he left the premises; that he was adjudged insane; that he was sent to the insane asylum in this state and that

he was thereafter discharged and released therefrom. Counsel for the plaintiff argue that the defendants had no right to take possession of the premises without giving notice to the plaintiff or his guardian that the lease would be terminated. Counsel for Smith, the defendant in error, argue that, in view of the fact that the plaintiff abandoned the premises and failed, after May 15, 1928, to pay the rent reserved in the lease, the defendant in error herein had the right to take possession of the premises without any notice whatever. It is agreed herein that possession was taken peaceably.

At common law the landlord had the right to re-enter and resume and retake possession without any process or legal proceedings upon the expiration of the tenant's right to occupy the premises, or upon the termination of the tenancy, or upon a forfeiture of the lease or disavowal of its terms, at least in all cases where he was able to obtain possession peaceably. 36 C. J. 597. He had the same right upon the surrender and abandonment of the lease by the tenant. 36 C. J. 598. If, however, we may take into consideration the fact that the plaintiff became insane, he cannot, strictly speaking, be said to have abandoned the premises, since abandonment, ordinarily at least, requires an intention to abandon (1 C. J. 7), and such intention cannot be attributed to an insane person. Furthermore, the mere non-payment of rent cannot, ordinarily at least, be relied upon as furnishing the respondent the right to take possession of the premises without notice. It is said in 36 C. J. 599:

"In the absence of a provision to such effect in the lease, non-payment of rent does not as a general rule work a forfeiture and hence confers no right of re-entry. Under an express provision in the lease, however, the landlord may re-enter for

non-payment of rent provided a sufficient demand for payment has been made before entry, unless the lease expressly dispenses with notice thereof."

The lease in this case was oral. It does not appear that under it the landlord was given the right to re-enter for non-payment of rent, nor does it appear that a demand for the payment of the rent was made prior to entry. It is true that it appears from the amended petition that the plaintiff's right to possession and occupancy of the premises was upon condition of paying the sum of two dollars daily. Had the rent been payable in advance, and at a definite place, it may be that the condition should be construed as a condition precedent and failure to comply therewith might give the landlord the right to enter without any demand for the rent. Union Scale Co. v. Machine Co., 136 Ia. 121, 113 N. W. 762. But the condition of this case, as pleaded, appears to be a condition subsequent and it is held that a breach of a condition subsequent does not work a forfeiture by mere operation of law. 36 C. J. 598, 599. We accordingly doubt that the ruling of the trial court can be upheld upon the theory advanced by counsel for the respondent, unless it is on account of the nature of the tenancy herein. So we must consider that.

While it is pleaded that the lease ran for an indefinite time, yet the rental reserved was the sum of two dollars to be paid daily, and there seems to be no doubt that under such an agreement the lease was one running from day to day. The accepted rule seems to be that if no definite time is agreed on, the term of the lease depends ordinarily, and in the absence of facts showing the contrary, on the intervals during which payment of rent must be made. Prindle v. Anderson, 19 Wend. 301; 23 Wend. 616; Mier v. Champion, 97 N. J. L. 493, 117 Atl. 603; Albey v. Wein-

gart, 71 N. J. L. 92; Linnard v. Sonnenschein (Cal. App.) 272 Pac. 315; Surrier v. Perly, 24 N. H. 219. See also 35 C. J. 1116, note 16. And it is further held that, in the absence of a statute or contract to the contrary, it is necessary, in order to terminate a periodic tenancy, to give notice of termination. We have no statute prescribing any notice to terminate tenancies. Section 62-1703, Wyo. Rev. St. 1931 provides for a notice to quit only as a condition precedent to an action of forcible entry and detainer, and that section, accordingly, has no application herein. At common law, six months' notice was ordinarily required to be given in order to terminate a tenancy from year to year, unless there was a contract modifying that rule. 35 C. J. 1111. A tenancy from quarter to quarter came up for consideration in the case of Cook v. Neilson, 10 Pa. St. 41. The court was evenly divided on the question as to whether or not notice to terminate such tenancy was necessary. Other cases, however, hold that a notice is necessary. 35 C. J. 1119. A tenancy from month to month has been considered in various cases and it has generally been held that notice is necessary, in order to terminate such tenancy. The courts are not altogether agreed for what length of time, in the absence of a statute or a contract, the notice should be given. Most of the courts require a notice of a month. 35 C. J. 1117. Tiffany, Landlord & Tenant 2, 1429. Tenancies from week to week have also come under the notice of the courts. In the case of Huffell v. Armistead, 32 E. C. L. 497, the court, in seemingly holding that no notice was necessary, said:

"I am of opinion, in the absence of any evidence to prove a usage to that effect, that in point of law a week's notice to quit is not implied as a part of the contract in the case of an ordinary weekly taking."

In the case of Towne v. Campbell, 54 E. C. L. 921, 136 Eng. Repr. 169, the plaintiff sued for rent, claiming that a notice to terminate the tenancy should have been given. The court said:

"I think it was by no means unreasonable to infer that the tenancy was weekly. If so, the plaintiff should have given some evidence to show that it was part of the contract that a week's notice to quit should be given. This he did not do, and it is not at all an unusual thing to hire furnished apartments by the month or the week without any stipulation for notice."

In the case of Jones v. Mills, 100 E. C. L. 788, 142 Eng. Repr. 604, however, it was held that some notice should be given, one of the justices saying that "where the holding is from week to week a week's notice should be given and a month's notice where the holding is from month to month." See Tiffany, supra 2, 1429.

Courts have not considered what the rule should be where the tenancy is one from day to day. There is only one reference in the authorities, so far as we have been able to find, to a tenancy of that character, and that is in the case of Patterson v. Jordon, 103 Wash. 200, 174 Pac. 454, but that case has no bearing upon the point involved in the case at bar. If such tenancy is analogous to those of a longer period, already considered—and some analogy exists—we should, perhaps, in strictness hold that a day's notice, or at least some notice, should be given of the termination. But the analogy must cease somewhere. A lease may be made for half a day or for an hour. The rule requiring notice in all cases might lead to an absurdity. Tenancies from year to year are frequently of considerable value. That might often be true of tenancies from quarter

to quarter or month to month or even week to week. It might, in exceptional cases, be true in case of a tenancy from day to day. But ordinarily, in any event, as in the case at bar, such leasehold could hardly be considered of any substantial value. The question accordingly arises whether we cannot find a closer analogy than that already mentioned. We think we can. It is said that tenancies from year to year arose out of the old tenancy at will. 36 C. J. 1096. If that is true, it must also be true of other periodic tenancies. In the ordinary case, a tenancy from day to day is not worth much more than a tenancy at will, and for all practical purposes should, we think, be considered in the same way. To terminate a tenancy at will, no notice is required, unless there is a contract or statute to the contrary. 35 C. J. 1096, 1130, sec. 362. In 35 C. J. 1130, Sec. 360, it is said:

"A tenancy at will may at common law be terminated by demand of possession without notice to quit. Anything which amounts to a demand of possession, although not expressed in precise and formal language, is sufficient to indicate a determination of the landlord's will. Thus the recovery of a judgment against a lessee for possession of the premises, or the commencement of an action of ejectment by the owner, determines the relation. The estate of a tenant at will may likewise be determined by an entry upon the premises by the owner for that purpose. And any act of ownership exercised by the landlord which is inconsistent with the nature of an estate at will, such as exercising rights of ownership which would be wrongful in view of a continuance of the tenancy, or any act done on the land for which the landlord would otherwise be liable to an action of trespass by the tenant will terminate the tenancy."

In the case at bar the landlord took possession of the premises, and peaceably, as heretofore said.

That clearly indicated an intent on his part to determine the tenancy that existed in the case at bar, and we must accordingly hold that the plaintiff in this case has not pleaded a cause of action for the purpose of recovering damage arising out of the fact that the defendants took possession of the premises in question.

If, however, we are wrong in likening a lease from day to day to one at will, it would seem that we are still bound to arrive at the same ultimate result upon another theory. There is no obligation to do an impossible thing. 31 C. J. 258, note 46. Pfeitzer v. Candeis, 53 Cal. App. 737; 200 Pac. 839. If a tenant leaves so that he cannot be found, or dies, a demand upon him would be impossible. If he becomes insane, it is of no avail. If a landlord is entitled to possession of his premises upon a day's notice, it would hardly be just to hold that, in case the tenant becomes insane, it should be necessary for the landlord to await proceedings for an inquiry into insanity, and thereupon cause a guardian to be appointed upon whom he can serve notice of cancellation of a tenancy of no substantial value. This might take weeks, during which time his contract would be violated, and his premises, perhaps, left unguarded and unprotected.

2. It is, however, further alleged in the amended petition that the defendant Smith and his associates converted the personal property in the restaurant, which belonged to plaintiff, to their own use. This, of course, they had no right to do, and they are responsible for the value thereof. The amended petition, accordingly, sets forth a good cause of action against the defendants. The defendant Smith, however, contends that the record discloses a release herein of one or two of the joint tort-feasors, and that he, accordingly, was al-

so released. Such release is ordinarily a matter of defense. Most of the courts require that it be specifically pleaded, though some of the authorities hold that it may be proved under the general issue. 53 C. J. 1271-1272. The defendant Smith, however, contends that these rules have no application in the case at bar for the reason that the release is shown by the record in this case, namely, by a motion filed therein and by the dismissal with prejudice of one or two of the defendants in the case. Counsel for Smith believe that a demurrer searches the record, and that everything that has taken place in the cause may be taken into consideration. We think, however, that counsel have misunderstood the rule as to when the record is opened and searched by a demurrer. The subject is considered in 49 C. J. 443-447. The rule is not applicable, as we understand it, to a demurrer to a petition or amended petition, but applies only to a demurrer filed to a plea or answer of the defendant, or to a reply or subsequent pleading. Generally speaking, a demurrer to a petition or amended petition takes into consideration nothing except what appears upon the face of the pleading. It is said in 49 C. J. 420 that:

"Where a defect appears on the face of the pleading a demurrer may be used to take advantage of it, but such matter only and no matter which does not appear on the face of the pleading demurred to will be considered."

There are some exceptions to the rule, which we need not consider in this case, and a reviewing court, perhaps, should at times be more liberal in this respect in order to comply with the rule that a cause should not be reversed for any error which does not prejudice the substantial rights of the ap-

pellant. A motion is not, under our practice, a part of the record proper. Fitzpatrick v. Rogan, 28 Wyo. 231, 203 Pac. 245. And it is at least questionable that the order dismissing the case as to one of the defendants with prejudice should be considered in determining the demurrer herein. 49 C. J. 424-426. The contrary has been held in National Lumber Co. v. Hobbs, 74 Ind. App. 476, 129 N. E. 255; Nelson v. O'Clare, 175 Wisc. 387, 185 N. W. 168. We may, for the purposes of this case, disregard these rules of practice, however, and consider the motion and the order of dismissal heretofore mentioned. The motion states that two of the defendants have not been found but that the defendants Smith and Dale Hammer have been served; that only Smith has appeared in the case, and that plaintiff desires to proceed only against him. Plaintiff accordingly asked that, as against the defendants who had not been served with summons, the case be dismissed without prejudice, but that as against Dale Hammer the case be dismissed with prejudice and at plaintiff's cost. An order was thereupon entered by the court reciting the filing of the motion and that it was not resisted. It was ordered that the case be dismissed as against two of the co-defendants of Smith with prejudice. The order does not correspond to the motion, but we may also disregard that fact. It is contended by counsel for Smith that dismissal with prejudice against some of the joint tort-feasors shows a complete release of the cause of action herein, effecting release of all tort-feasors including the defendant in error. With this contention we cannot agree. A mere dismissal of a cause does not warrant the conclusion drawn by counsel. 18 C. J. 1162. Note, 50 A. L. R. 1091. In 53 C. J. 1265 it is said:

"A dismissal or agreement to dismiss as to one of the joint tortfeasors is not a release having the effect of releasing all, at least where such an agreement is in return for only partial satisfaction, such an agreement being held a mere covenant not to sue, but the amount paid will reduce the recovery against the other pro tanto."

Neither the motion nor the order of dismissal heretofore mentioned discloses as to whether or not the plaintiff received full or partial satisfaction from the defendants therein mentioned. The motion to dismiss with prejudice was in all probability based upon some agreement entered into between the plaintiff and the defendant affected thereby. The record does not disclose what that agreement was. That a settlement has been made with one of the joint tort-feasors, even for a consideration, does not necessarily show that the others have been discharged. Note 50 A. L. R. 1090. Thus we held in Natrona Power Company v. Clark, 31 Wyo. 284, 295, 225 Pac. 586, that a release which is qualified and shows on its face the intention of the parties that the right of action against others should not be destroyed negatives the idea of full satisfaction and may be construed as an agreement not to sue and a discharge of others only pro tanto.

The authorities generally hold that a covenant not to sue one of several joint tort-feasors does not release the other joint tort-feasors. 23 R. C. L. 408. In Musolf v. Electric Company, 108 Minn. 369, 122 N. W. 499, it is said:

"It is not, however, necessary here to consider nor to determine the exact test by which a release is to be distinguished from a covenant not to sue. It is well settled that the distinction exists; that the intention of the parties controls; that if they have in fact, by use. of consistent terms, expressed

an intention not to bring an action against one of a larger number of joint tort feasors and not to discharge the others, the law will give effect to their agreement; and that despite the execution of the agreement recovery may be had against the tort feasors not parties to the instrument."

The agreement of settlement may be oral or in writing. Scott v. Fair Association, 102 Kans. 653, 171 Pac. 634. If the plaintiff received full compensation, he cannot, of course, recover anything more. If he did not, and the settlement was for only partial compensation, and it appears that such was the agreement, and that defendant Smith should not be released, the plaintiff is not barred to sue him. We need not decide as to whether or not the settlement was prima facie a release in full of the damages suffered. The plaintiff in any event should be given an opportunity of showing the facts. The action of the court deprived him of the right both to plead as well as to show them. That was prejudicial error.

The judgment of the trial court must, accordingly, be reversed, and the cause remanded to the district court with direction to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.