**Stacey Lynn BJORK,**
**Appellant (Plaintiff),**

v.

**CHRYSLER CORPORATION, a Delaware Corporation; the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints; Ray Jenson; Howard Vanvalkenberg; Byron Sunberg; and Michael B. Hickman, Appellees (Defendants).**

**No. 84–131.**

Supreme Court of Wyoming.

June 27, 1985.

---

Terry W. Mackey and Robert W. Tiedeken of Terry W. Mackey, P.C., Cheyenne, for appellant.

Michael Golden and Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for appellee Chrysler Corp.

Timothy G. Williams of Guy, Williams, White & Argeris, Cheyenne, for appellee The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints.

George E. Powers of Godfrey & Sundahl, Cheyenne, for appellee Ray Jenson.

Rebecca A. Lewis of Hirst & Applegate, Cheyenne, for appellees Howard Vanvalkenberg and Michael B. Hickman.

Robert M. Shively of Murane & Bostwick, Casper, for appellee Byron Sunberg.

Thomas E. Campbell of Hanes, Gage & Burke, P.C., Cheyenne, filed a brief for the Amicus Curiae Committee of the Wyoming Trial Lawyers Ass'n.

Before THOMAS*, C.J., and ROSE, ROONEY**, BROWN and CARDINE, JJ.

\* Became Chief Justice January 1, 1985.

\*\* Chief Justice at time of oral arguments.

1. A term employed by the appellant in her brief to this court.

ROSE, Justice.

## FACTS

While yet in her minority years, appellant Stacey Lynn Bjork was rendered an "incomplete quadriplegic"[1] in a highway accident which happened on April 22, 1979 near Wamsutter, Wyoming. Stacey was riding in an automobile driven by David Oberholtzer on the return of a round trip from Rawlins, Wyoming, to Salt Lake City, Utah, which was sponsored by the Church of Jesus Christ of Latter-Day Saints of Rawlins, First Ward and Second Ward. On November 9, 1983, Ms. Bjork brought suit and the appellees-defendants who remain in this appeal are Chrysler Corporation; The Corporation of the President of the Church of Jesus Christ of Latter-Day Saints; Ray Jenson; Howard Vanvalkenberg; Byron Sunberg; and Michael B. Hickman.

Stacey Bjork's father was appointed her guardian, and, through him, she settled for policy limits with his insurance company which policy not only furnished coverage to Mr. Bjork, but also covered the Chrysler car and its driver. In these settlement negotiations, appellant's guardian executed a form release furnished by the insurance company which Stacey ratified a few years later when she attained her majority. The handwritten section of the document specifically released David Oberholtzer and his and his father, Paul. By its printed words, the instrument also purported to discharge "* * * all other persons, firms or corporations liable or who might be claimed to be liable * * * from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever * * *."

The parties do not question the validity of the release to the Oberholtzers.[2]

At the conclusion of the summary-judgment proceedings—which were predicated

2. The release in question is in words and figures as follows:
 "Release
 "For the Sole Consideration of <u>Fifty Thousand and 00/100</u> Dollars, the receipt and sufficiency whereon is hereby acknowledged, the un-

upon the pleadings, the release in question and affidavits of the guardian and his attorneys stating that they did not intend that the release should discharge any persons but those specifically named therein— the trial court found that the above-quoted "all other persons" catch-all language of the release document had the effect of discharging all unidentified tortfeasors and alleged tortfeasors including the appellees. In coming to its conclusion, the court found that the release satisfied the requirements of § 1–1–113(a)(i), W.S.1977, of Wyoming's version of the Uniform Contribution Among Tortfeasors Act.[3] Section 1–1–113 provides:

"Release or covenant not to sue.

"(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

> dersigned hereby releases and forever discharges <u>Paul Oberholtzer & David Oberholtzer</u> their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the <u>22</u> day of <u>April</u>, 19<u>79</u> at or near <u>Wamsutter, Wyoming</u>.
> "This release expressly reserves all rights of the parties released to pursue their legal remedies, if any, against the undersigned, their heirs, executors, agents and assigns.
> "Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
> "Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.
> "In Witness Whereof, <u>I</u> have hereunto set <u>my</u> hand(s) and seal(s) this <u>27th</u> day of <u>September</u>, 19<u>80</u>. In presence of <u>Marge W. Todd</u>.
> Signed <u>x s/Ronald J. Bjork</u>

"(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death *unless its terms so provide;* but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis added.)

The trial court held, therefore, that the language of the printed form releasing " * * * all other persons, firms or corporations liable or who might be claimed to be liable, * * * " were the "terms" of the instrument which satisfied the emphasized proviso language contained in § 1–1–113(a)(i), supra.

We will reverse the trial court.

> "s/Marge W. Todd
> "Witness"

3. In remarks from the bench, the trial court said:

> "First of all, I don't think there's any dispute among counsel that this release is nothing more, nor less than another type of a contract. It is an instrument that must be construed in accordance with the law of contracts. And we are helped, I think, in making that determination to some extent by 1–1–113, subtopic subparagraph (1) of the statutes, and it says in part: 'It does not discharge any of the other tort feasors from liability for the injury or wrongful death unless its terms so provide.'
> "If its terms so provide, then the converse of that language would be, I guess, that it discharges those. It doesn't say in that statute that unless it names those in the release, but it says that unless its terms provide. Its terms are to include 'their heirs, executors, administrators, agents, assigns and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any of the liability to the undersigned, but all expressly denying liability from any and all claims.' Those are its terms and they so provide by those terms in accordance with the language of Section 1–1–113, subparagraph (1) of that statute."

## THE ISSUE

The appellant identifies the issue for our decision as follows:

Did the trial court err "in granting summary judgment to the appellees on the grounds that they had been released by appellant's guardian on September 27, 1980"?

We would say that the issue is even more precisely this:

When the release instrument and Wyoming's Right to Contribution Among Joint Tortfeasors statutes, §§ 1-1-110 through 1-1-113, W.S.1977, are read together, can it even then be said that it was the intention of the contracting parties and the legislature that a general release would also discharge unidentified tortfeasors who were not parties to the contract and who had offered no consideration to the plaintiff in return for the release, and whose adverse damage judgments—if any—would be reduced in the amount that settling tortfeasors paid or agreed to pay in return for their releases?

### Decision

■ We agree with the trial judge's conclusion that a decision in this case requires that the Right to Contribution Among Joint Tortfeasors statutes and the release document must be considered together as constituting the entire agreement of the parties because, under § 1-1-113, the release of one tortfeasor no longer releases the remaining tortfeasors by operation of law as was the case at common law.[4] Since the "terms" of the instrument—according to the directive of § 1-1-113(a)(i)—will decide whether tortfeasors who are not parties to the release contract will enjoy discharge, it therefore becomes necessary to read all of Wyoming's Right to Contribution Among Joint Tortfeasors statutes together with the release in order to ascertain whether

the instrument contains such "terms" as will have the effect of excusing tortfeasors and/or claimed tortfeasors who are not specifically identified—who are not parties to the release agreement—and who have paid no consideration for their release.

When § 1-1-113 and the release are considered as one, their provisions formulate an instrument which contains:

(1) a handwritten discharge in favor of the Oberholtzers which does not profess to be in full satisfaction of all of Ms. Bjork's damages;[5]

(2) a purported printed release of unidentified persons who had not been sued and who had paid no consideration for the release;

(3) a statutory directive that a release or covenant not to sue will not discharge any tortfeasor—"unless its terms so provide";

(4) a statutory provision which holds that the plaintiff's claim against tortfeasors who do not settle will be reduced by the amount stipulated or paid by the settling tortfeasor; and

(5) a statutory provision which provides that a settling tortfeasor is relieved of contribution obligations.

### The Common-Law Release Rule

Prior to the adoption of Wyoming's version of the Uniform Contribution Among Tortfeasors Act, and absent the "all other persons" release language, the instrument in issue here would have been interpreted to be a common-law release, the effect of which would have been to discharge not only the Oberholtzers but all other joint tortfeasors.

We said in *Natrona Power Co. v. Clark,* 31 Wyo. 284, 225 P. 586, 587 (1924):

"* * * A release of one joint tortfeasor operates as a discharge of both, but a

---

4. For discussions of the common-law rule in Wyoming, see *Natrona Power Co. v. Clark,* 31 Wyo. 284, 225 P. 586 (1924). Accord *Casper National Bank v. Jones,* 79 Wyo. 38, 329 P.2d 1077 (1958); *Day v. Smith,* 46 Wyo. 515, 528, 30 P.2d 786 (1934).

5. The release undertakes to make a "compromise adjustment"—it does not purport to fully compensate Ms. Bjork for her injuries and her damages.

covenant not to sue one will not discharge the other."

Accord *Day v. Smith*, 46 Wyo. 515, 30 P.2d 786 (1934).

A release of one was said to discharge all joint tortfeasors for the reason that, even though the parties may not have so intended, the instrument had the effect of extinguishing the cause of action, and there could therefore be but one satisfaction of the obligation. *Natrona Power Company v. Clark*, supra.[6] This rule was held to operate in favor of unreleased tortfeasors even where the instrument contained an express reservation of the right to sue. We said in *Natrona Power Co. v. Clark*, 225 P. at 588:

> " * * * The effect of such a reservation in an instrument which would otherwise be a release has frequently been the subject of judicial inquiry, and there are many cases in this country holding that the reservation can be given no effect at all, and that the instrument operates as a release of all persons jointly liable. [Citations.] The idea underlying these cases is that the primary purpose to release is the thing to be carried out, and that the reservation of the right to sue others, being inconsistent with the purpose to release, must be disregarded. *Walsh v. New York, C. & H.R. Co.*, 204 N.Y. 58, 97 N.E. 408, 37 L.R.A. (N.S.) 1137. In other words, the injured person cannot release one wrongdoer and at the same time reserve the right to pursue another for the same wrong."

In a more recent case involving the effect of a release by the original tortfeasor upon a successive wrongdoer, the Ohio Supreme Court said in *Whitt v. Hutchison*, 43 Ohio St.2d 53, 330 N.E.2d 678 (1975):

> "In some cases, it was even held that a release of one jointly liable acted as a release of all, even though the release contained an express provision to the contrary. *Ellis v. Bitzer* (1925), 2 Ohio 89. See, e.g., *Atlantic Coast Line R.R. Co. v. Boone* (Fla.1956), 85 So.2d 834; *Getzendaner v. United Pacific Ins. Co.* (1958), 52 Wash.2d 61, 322 P.2d 1089."[7]

### The Injustice of The Common Law

These common-law doctrines have been roundly criticized as being "harsh" and "very unfair," Calamari and Perillo, The Law of Contracts § 20–3 (2d Ed.1977). In *Whitt v. Hutchison*, 330 N.E.2d at 681, the court said:

> "The injustice of the traditional rule was that it frequently acted to extinguish a cause of action which was only partly compensated, even though the parties themselves had no such intention. The rule also made it very difficult for a claimant to settle a claim by partial settlements with several persons who were jointly liable for his injury. A major cause of these difficulties was the doctrine of joint liability itself, a doctrine largely grounded in a policy of assuring compensation for injured plaintiffs, but which the traditional rule paradoxically converted into a burden and a trap for

**6.** A modern expression of this rule is to be found in *Whitt v. Hutchison*, 43 Ohio St.2d 53, 330 N.E.2d 678, 681 (1975), where it was said: " * * * The somewhat metaphysical theory of this rule is that for a single injury there is a single, indivisible cause of action, and that a general release for valuable consideration (or even, in some cases, for none), is a satisfaction of the injury and a release of the cause of action. *Cocke v. Jennor* (K.B. 1614), 80 Eng. Rep. 214; *Price v. Baker* (1959), 143 Colo. 264, 352 P.2d 90 (overruled in part by *Cox v. Pearl Investment Co.* [1969], 168 Colo. 67, 450 P.2d 60); *Dougherty v. California Kettleman Oil Royalties* (1939), 13 Cal.2d 174, 88 P.2d 690; *Muggenburg v. Leighton* (1953), 240 Minn. 21,

60 N.W.2d 9 (but, see, *Gronquist v. Olson* [1954], 242 Minn. 119, 64 N.W.2d 159); Salmond on Torts (14 Ed.) 635."

**7.** In interpreting the intent of the parties where the original tortfeasor executed a general release and a "successive tortfeasor" doctor sought sanctuary under its protective umbrella, the Ohio Supreme Court reaches a conclusion which is diametrically opposed to that which we reached under the same fact situation in *Harris v. Grizzle*, Wyo., 599 P.2d 580 (1979), where we held that the release of the original tortfeasor did not serve to release a subsequent independent tortfeasor doctor—i.e., "successive tortfeasor"—in a malpractice suit.

unwary plaintiffs. Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413."

In Prosser and Keeton, Law of Torts, § 49, Release, p. 333 (5th Ed.1984), the authors say:

"This result has been justly condemned because it compels the plaintiff either to forego any opportunity of obtaining what he can get from one defendant without suit, or to give up the entire claim against the other without full compensation. Historically, and on policy grounds, it has no justification, since causes of action against mere concurrent tortfeasors not acting in concert have always been separate, and their separate character should not be affected by the possibility of joinder for procedural convenience. A surrender of one therefore should not on any reasonable basis discharge the other, except to the extent that there has been full compensation. Even as applied to cases of concerted action, the rule seems at best an antiquated survival of an arbitrary common law procedural concept, arising out of long forgotten semi-criminal forms of action; and it has no reasonable application at all to cases of mere concurrent negligence."

In Annot., 73 A.L.R.2d 403, 407, Release of one joint tortfeasor as discharging liability of others: modern trends, we find these thoughts expressed:

" * * * The rule has been vigorously attacked by law writers.[8] It has been described as merely a 'surviving relic of the Cokian period of Metaphysics.' [9] It tends to defeat the fair expectations and intentions of the parties to the release.[10]"

In *Breen v. Peck*, 28 N.J. 351, 146 A.2d 665, 668, 73 A.L.R.2d 390 (1958), the New Jersey Supreme Court said:

"In the United States the English release rule has been under vigorous attack for many years. In 1923 Dean Wigmore referred to it as a surviving relic which was based on false logic and, although accepted by many courts, was fortunately being repudiated in some states by judicial decisions and in others by legislative action. See Wigmore, 'Release to One Joint-Tortfeasor,' 17 Ill.L.Rev. 563 (1923). In his 1930 edition of Cooley on Torts, Professor Throckmorton referred to the growing tendency on the part of American courts to view with disfavor the English release rule and to replace it with the 'sound and reasonable' rule that unless the parties so intended a release should not absolve strangers thereto. See Throckmorton's Cooley on Torts, § 80 (1930). In 1941 Dean Prosser referred to the rule as 'at best an antiquated survival of an arbitrary common law procedural concept' and suggested that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer 'unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain .it.' See Prosser, Torts, 1109, 1110 (1941); Prosser, Torts, 244–245 (2d ed. 1955). Cf. Prosser, 'Joint Torts and Several Liability,' 25 Calif.L. Rev. 413, 424 (1937). In 1951 Professor Corbin's work on contracts included devastating comments on the English release rule in the field of torts as well as contracts (4 Corbin, Contracts §§ 931–935 (1951)), and in 1956 Professors Harper and James joined in advocating the modern view that the legal effect of a release on strangers thereto should justly be determined by the intent of the parties to the release and the extent of the compensation paid to the releasor rather than upon outmoded concepts of

---

8. See the pertinent discussion in *Breen v. Peck,* 28 N.J. 351, 146 A.2d 665, 73 A.L.R.2d 390 (1958). See also comment, *Torts—Joint Tortfeasors—Release of One Not Release of All,* 12 Vanderbilt L.Rev. 1414 (1959).

" * * * [T]extwriters, without notable exception, have expressed the view that the reasons given for it have been inadequate * * *." Ha-

vighurst, *The Effect of a Settlement With One Co-Obligor Upon the Obligations of the Others,* 45 Cornell L.Q. 1 (1959).

9. *Friday v. United States,* 239 F.2d 701 (9th Cir. 1957). See *Breen v. Peck,* supra n. 8.

10. *Breen v. Peck,* supra n. 8.

ancient times. See 1 Harper & James, Torts, 711–712 (1956). See also Notes, 22 Minn.L.Rev. 692 (1938); 18 U.Cin.L.Rev. 378 (1949); 33 Notre Dame Law 291 (1958)."

## Courts and Legislatures Are Abandoning the English Rule

In the last 50 years, the courts of America have been abandoning the common-law-release rule.[11] Many states, including Wyoming, have enacted statutes.[12] Even where statutes have not been enacted, courts have retreated from the common-law rule.[13] A device commonly employed is to interpret a release instrument to be a covenant not to sue,[14] by which the plaintiff does not surrender the cause but merely agrees not to enforce it. Such a covenant does not release other tortfeasors,[15] even where rights to sue are not reserved unless full satisfaction is shown.[16] The courts have said, in their effort to avoid the unjust result of the English rule, that intent governs rather than form, and that the court will look to the statute (where there is one) and the purported release instrument together in order to ascertain intent.[17]

Prosser and Keeton explain how the English rule has otherwise been moderated in the American court system when they observe at 334 of their work on the Law of Torts:

"There still remain some instruments which by any fair construction are not covenants, but releases. Even as to these the common law rule has been changed in some states. Statutes have been enacted, and even without a statute, a substantial number of jurisdictions have held that the release does not discharge the second tortfeasor if it provides in terms that it shall not do so. Some of them even have recognized an accompanying oral agreement to that effect, and have met the objection of the parol evidence rule with the argument that the second tortfeasor is not a party to the instrument. Still others have accomplished the same result by the short and simple method of calling a release with reservation of rights against others a covenant not to sue."

We find ourselves in agreement with Prosser and Keeton, Law of Torts, § 49, Release, supra at 335–336, where the authors express the opinion that:

"The only desirable rule would seem to be that a plaintiff should never be deprived of a cause of action against any wrongdoer when the plaintiff has neither intentionally surrendered the cause of action nor received substantially full compensation. If the statutes are taken into account, this is now the rule actually applied in most American jurisdictions.

**11.** For authority for this proposition, Prosser and Keeton, Law of Torts, § 49, Release, supra at 333, n. 20, say:

" * * * The National Conference of Commissioners on Uniform State Laws entered this field early. Relevant provisions appeared in its Uniform Contribution Among Tortfeasors Acts of 1939 and 1955. The latter Act stands 'for possible use by states not adopting the principle of comparative fault,' and the Uniform Comparative Fault Act, 1977, contains relevant provisions on the effect of releases for states accepting the principle of comparative fault. See 12 Uniform Laws Annotated, 1982 Pocket Part, 34."

**12.** See *Harris v. Grizzle*, supra n. 7, for a Wyoming decision under the Right to Contribution Among Joint Tortfeasors statutes.

**13.** See *Union Pacific Ry. Co. v. Artist*, 60 F. 365 (8th Cir.1894); *Coulter, Inc. v. Allen*, Wyo., 624

P.2d 1199 (1981); *Natrona Power Co. v. Clark,* supra, for cases arising in Wyoming courts prior to the enactment of Wyoming's Right to Contribution Among Joint Tortfeasors statutes. In an effort to avoid the English rule, the court, in *Union Pacific Ry. Co. v. Artist,* supra, seized upon the theory that the released tortfeasor must be specifically identified, and, in *Natrona Power Co. v. Clark,* supra, we said that a discharge which contained a reservation of right should be held to be a covenant not to sue rather than a release.

**14.** *Natrona Power Co. v. Clark,* supra.

**15.** *Natrona Power Co. v. Clark,* supra.

**16.** Prosser and Keeton, Law of Torts, § 49, Release, supra at 334.

**17.** Prosser and Keeton, Law of Torts, § 49, Release, supra at 334.

Where there has been such full satisfaction, or where it is agreed that the amount paid under the release is so received, no claim should remain as to any other tortfeasor; but these are questions of fact, and normally to be determined by the jury, where the amount of the claim is unliquidated. * * * If it is clear that the satisfaction received was understood to be only partial, it should not discharge the claim against the second tortfeasor. It is commonly held, however, that a credit is allowed to diminish the amount of damages recoverable against the second tortfeasor, irrespective of an agreement that it shall not, and regardless of whether it is received under a release or a covenant not to sue."

### Wyoming Release History

As early as the late years of the last century, courts interpreting Wyoming law undertook to soften the harshness of the common-law release rule. In *Union Pacific Ry. Co. v. Artist*, 60 F. 365 (8th Cir. 1894), the federal circuit court, in addressing an appeal from the federal district court for Wyoming, held that a release for settlement of a claim for certain personal injuries specified in the release, and

" ' * * * from all manner of actions, causes of action, * * * claims and demands, whatsoever, * * * from the beginning of the world to this day,' " 60 F. at 366,

does not discharge responsibility for personal injuries not therein specified and not known to exist at the time the release was executed, since the general terms in the release are limited by the preceding specifications.

In *Natrona Power Co. v. Clark*, supra, almost 50 years before the enactment of Wyoming's Right to Contribution Among Joint Tortfeasors legislation, we said that, where an instrument contained a reserva-

tion of right to sue others, we would interpret it as being a covenant not to sue, rather than a release, in which case the unnamed tortfeasors would not be discharged by the execution of the instrument. The rationale for this holding is that where the release and the reservation are considered with the intent of the parties in mind—as that intention is gleaned from the whole instrument—and where the writing can operate two ways—one consistent with intent and the other repugnant to it—

" * * * the court will give it the construction best calculated to carry out the intent." *Natrona Power Co. v. Clark*, 225 P. at 588.

It was the court's thought that, if the instrument containing a reservation be construed as a release, then the language of the instrument is repugnant to its operational effect because the language says the releasor intends to retain a cause of action against other tortfeasors while the legal effect of a release is to extinguish the plaintiff's cause of action. However, if the document is construed as a covenant not to sue, then the language of the instrument is not internally repugnant, nor is the language repugnant to the legal effect of the covenant; thus the effect of this interpretation is to carry out the intention of the parties.

Since the passage of Wyoming's Right to Contribution Among Joint Tortfeasors legislation, we have considered the effect of the contribution statutes upon a general release which did not contain a reservation of right and have reached an intention of the parties' interpretation which calls for a different conclusion than that which would have been compelled by the common-law release rule. In *Harris v. Grizzle*, Wyo., 599 P.2d 580, 586 (1979), where the suit was against "successive tortfeasors," [18] we said:

---

18. Where death ultimately resulted, our opinion refers to an injured plaintiff's treating doctor as a "successive tortfeasor." In the case note on *Harris v. Grizzle*, supra, contained in XV Land and Water L.Rev. 337 (1980), the doctor is referred to as a "subsequent independent tort-

feasor." In any event, the wrong of each tortfeasor was one of the proximate causes of death, and, at common law, the release of one would have had the effect of releasing the other, because the cause of action would have been

"When a general release discloses it has been given to named [releasees] who denied liability but made payment in settlement, then *other alleged wrongdoers who were not parties to the release and made no payment toward satisfaction can fairly be called on to show that either the release which they rely on was intended to discharge them or that the releasor has received full compensation.*" (Emphasis added.) Citing: *Fieser v. St. Francis Hospital,* 212 Kan. 35, 510 P.2d 145, 151 (1973); *Missouri v. Crandall,* Mo., 581 S.W.2d 829 (1979); *Summey v. Lacy,* 42 Colo.App. 1, 588 P.2d 892, 894 (1978); *Callan v. O'Neil,* 20 Wash.App. 32, 578 P.2d 890, 892–893 (1978); *Alaska Airlines, Inc. v. Sweat,* Alaska, 568 P.2d 916, 928–930 (1977); *Rock v. Reed-Prentice Division of Package Machinery Co.,* 39 N.Y.2d 34, 382 N.Y.S.2d 720, 346 N.E.2d 520 (1976); Annot., 39 A.L.R.3d 260 (1971); Annot., 8 A.L.R.3d 639 (1966).

Given the effect of the applicable statutes (particularly § 1–1–113(a)(i) and (ii)), the purported release instrument and the holding in *Harris v. Grizzle,* supra, it can be seen that the common-law rule no longer holds in Wyoming because, at common law, a general release—either with or without reservation language—would serve to discharge all unnamed tortfeasors. Under the statute, on the other hand, unidentified tortfeasors are not released unless the terms of the agreement so provide, and, according to our holding in *Harris v. Grizzle,* the burden is upon those who are not parties to the release and have made no payment toward satisfaction of the claim, to (a) establish that the parties intended that they be discharged by producing proof to that effect or (b) prove the releasor has received full compensation.

### Full Compensation Is Not Shown In the Case at Bar

Recalling *Harris v. Grizzle,* supra, and reading the summary-judgment pleadings, affidavits and supporting documents together with the statute and release instrument in the appeal which is here for our consideration, it becomes apparent that the record contains no evidence that the releasor has received full compensation for her injuries. By its own terms, the release only purports to have been executed as a "compromise adjustment," and the record reveals that Ms. Bjork received the policy limit of $50,000 from the Oberholtzers' insurance carrier. If Stacey Bjork is an "incomplete paraplegic"—as alleged—we are certainly not prepared to say as a matter of law in this appeal from a summary judgment that she has received the "full compensation" of which *Harris v. Grizzle* speaks.

### Intention of the Parties

In support of their contention that the "all other persons" catch-all language of the release is all that is necessary to provide the court with the parties' intent, the appellees rely upon our opinion in *Coulter, Inc. v. Allen,* Wyo., 624 P.2d 1199 (1981). Preliminarily, it should be noted that the Coulter case is in contract rather than the law of torts which furnishes the underpinning for the case at bar. Additionally, the release in Coulter purported to discharge the releasee in recognition of *full payment* of the debt, rather than a settlement for a part thereof—which is what we are compelled to assume to be the situation in the appeal before the court here.[19] In comparing the *Coulter* release problem with the issue with which we are concerned in the case at bar, it is also to be remembered that in our search for the intent of

---

extinguished upon the execution of the release. *Natrona Power Co. v. Clark,* supra.

**19.** While the presence of the release instrument may be sufficient to shift the burden of proof in a trial on the merits, Prosser and Keeton, Law of Torts, § 49, Release, supra at 353, there is no proof that the damages obligation to Stacey

Bjork has been discharged by the payment from Oberholtzers' insurance carrier, and, in summary-judgment proceedings, it is the movant's burden to show that there exists no genuine issue of material fact. *Sanders v. Lidle,* Wyo., 674 P.2d 1291 (1984).

the parties, in *Coulter*, we were able to analyze a release contract document unencumbered by statutory impact, where here it is necessary to read the release agreement and the contribution statutes together in order that the parties' intentions may be ascertained.

In *Coulter*, we acknowledged that the release should be construed according to the law of contract in order to ascertain the intention of the parties. We said, quoting *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980):

" 'Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]

" 'If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract "is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present." [Citation.] Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]

" '* * * Whether ambiguity exists is a question of law. * * *'

"See *Natrona Power Co. v. Clark*, 31 Wyo. 284, 225 P. 586 (1924); and *Harris v. Grizzle*, Wyo., 599 P.2d 580 (1979) for instances in which releases were construed as a matter of law.

" 'Generally the construction and legal effect of an ambiguous contract are questions of law, although where its

meaning depends on extrinsic evidence *which is in material conflict*, or capable of more than one inference, a question of fact as well is presented.' (Emphasis supplied.) 17A C.J.S. Contracts § 617." 624 P.2d at 1203–1204.

When the Statute and the Release Are Taken Together *They Do Not Form* a "Clear and Unambiguous" Contract As Was the Case in *Coulter, Inc. v. Allen*

In *Coulter*, we applied the above-quoted rules from *Amoco Production Company v. Stauffer Chemical Company*, supra, to the instrument in question and held that the language of the release was clear and unambiguous as a matter of law, and that the instruction giving the jury the authority to find whether or not the release was effective as a factual determination was, therefore, error. We cannot say as a matter of law, in the case at bar, that the relevant release provisions are in full payment for the injuries suffered, nor can we say that the discharge provisions which are contained in the release and the applicable contribution statutes are "clear and unambiguous." That this same boilerplate catch-all release language, taken together with the provisions of Wyoming's Right to Contribution Among Joint Tortfeasors law combines to formulate a meaning which is "capable of more than one inference,"[20] thereby structuring an ambiguous contract which lends itself to interpretations of law and fact concerning the intention of the parties and the legislature, is a proposition which finds its support in numerous authorities throughout the country.

In an appeal where the statute abrogates the common-law rule by providing that the release does not discharge any other tortfeasor "unless its terms otherwise provide" (which is similar to the language contained in Wyoming's § 1–1–113(a)(i)), the Ohio Supreme Court, in *Beck v. Cianchetti*, 1 Ohio St.3d 231, 439 N.E.2d 417, 420 (1982), held

**20.** Language quoted from 17A C.J.S. Contracts § 617, as quoted in *Amoco Production Company v. Stauffer Chemical Company*, supra, and re-quoted with approval in *Coulter, Inc. v. Allen*, supra.

that the intention of the parties governs the interpretation of releases, and went on to say:

> "Apparently the General Assembly intended to change the common law; otherwise, there would have been no reason to enact the statute. The legislative mandate in R.C. 2307.32 [21] abrogates the common law rule which provided that a release given to one tortfeasor was a release to all others (see *Whitt [v. Hutchison]*, supra) and often entrapped the average person into reasonably assuming that settling a claim with one person would have no effect upon rights against others with whom he did not deal. Instead, R.C. 2307.32 provides that a release to one tortfeasor does not discharge any other tortfeasor 'unless its terms otherwise provide.' *The thrust of the section is to retain the liability of tortfeasors and, thus, the phrase 'unless its terms otherwise provide' should be narrowly construed and require a degree of specificity. Allowing a discharge based upon general language which does not name or identify a tortfeasor perpetuates the common law rule and is contrary to the statute.*[22] *"The statutory phrase 'unless its terms otherwise provide' requires a release to expressly designate by name or to otherwise specifically describe or identify any tortfeasor to be discharged.* For example, a release could meet the statutory requirement by naming an individual or specifically identifying a tortfeasor such as stating the driver cf the car which struck the motorcycle.

> \*　　\*　　\*　　\*　　\*　　\*

> *"We conclude that R.C. 2307.32 requires that a release designate by name or otherwise specifically identify a party to be released. Broad general language, such as 'all other persons,' is not sufficient.* Thus Cianchetti, appellant's decedent, was not released because he

was not specifically identified." (Emphasis added.)

In *Young v. State*, Alaska, 455 P.2d 889 (1969) (accord *Alaska Airlines, Inc. v. Sweat,* supra), Justice Rabinowitz, writing for a unanimous court, analyzed facts and law similar to the case at bar. There, a passenger was injured in a construction area and sued the driver, the road contractor and the State of Alaska. The plaintiff subsequently released the driver with a discharge instrument which not only named him personally, together with his heirs, agents, etc., but also purported to release "all other persons," with essentially the same language as is contained in the release between Bjork and the Oberholtzers.

The contractor and the State moved for summary judgment in reliance upon the above-quoted language; the trial court granted the motion, and the Supreme Court of Alaska reversed. Having reviewed the historical injustice produced by the common-law rule, the Alaska court went on to notice that courts have persistently sought ways to employ judicial distinctions in order to avoid applying the English rule. These efforts have included interpreting instruments as covenants not to sue (see *Natrona Power Company v. Clark,* supra); the making of judicial distinctions between independent and concurring torts (see Prosser, *Joint Torts and Several Liability,* 25 Cal.L.Rev. 413 (1937)); and statutory exceptions to the common-law rule (as in Wyoming's Right to Contribution Among Joint Tortfeasors legislation).

The Alaska court observed that these judicial distinctions have resulted in the formulation of three identifiable rules which have been set out in *Twentieth Century-Fox Film Corporation v. Winchester Drive-In Theatre, Inc.,* 351 F.2d 925, 928–929 (9th Cir.1965), cert. denied 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526, they being:

---

**21.** R.C. 2307.32, being one of the sections in Ohio's adoption of the Uniform Contribution Among Joint Tortfeasors Act, is nearly the same as our § 1–1–113.

**22.** The holding in *Beck v. Cianchetti,* supra, is remarkably similar to *Union Pacific Ry. Co. v. Artist,* supra.

"(1) A release given one joint tort-feasor necessarily releases all others even though it expressly reserves rights against them. This is generally referred to as the common law rule.

"(2) A release of one tort-feasor does not release other joint tort-feasors unless the release expressly so provides.

"(3) A release of one tort-feasor releases all others jointly liable unless the release expressly reserves rights against joint tort-feasors."

The Supreme Court of Alaska opted for the second of these positions, and reversed the trial court with the following rationale:

"In our opinion the rule which will bring most clarity to this area of ambiguous and conflicting release rules is one under which a release of one tort-feasor does not release other joint tort-feasors unless such tort-feasors are specifically named in the release. We are of the further view that adoption of this rule will insure that the intent of the parties to the release is given effect and will greatly minimize the possibility of any party being misled as to the effect of the release." [23] *Young v. State,* 455 P.2d at 893.

In *Alsup v. Firestone Tire & Rubber Company,* 101 Ill.2d 196, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984), the plaintiff's car was struck by a second car. Suit was filed against the driver of the second vehicle and also Firestone, who had manufactured the tires for the second vehicle. Plaintiffs settled with the driver and executed a release, whereupon Firestone moved for summary judgment in reliance upon the release. The trial court denied the motion, and the Supreme Court of Illinois affirmed. The issue in the case was this:

" 'Whether the terms of a release which include the payer "and all persons, firms and corporations, both known and unknown, of and from any and all claims' provide for the release of an alleged joint tortfeasor pursuant to Section 302(c) of

the Illinois Contribution Among Joint Tortfeasors Act (Ill.Rev.Stat. ch. 70, sec. 302(c)), where plaintiffs investigated whether an action could be brought against the alleged joint tortfeasor and believed that no cause of action existed and where plaintiffs have stated in affidavits that they did not intend to release the alleged joint tortfeasors, but where plaintiffs executed the release after consultation with their attorneys?' " 77 Ill. Dec. at 739, 461 N.E.2d at 362.

Section 2(c) of the Illinois Contribution Among Joint Tortfeasors Act contained the same provisions as our § 1-1-113(a)(i). As a predicate for decision, the Illinois Supreme Court observed:

"Our statute is based upon the Uniform Contribution Among Tortfeasors Act.

"The language of the releases given by the plaintiffs, from which we have quoted, is general and broad. The releases purport to release the payers and *'all other persons, firms, and corporations, both known and unknown'* from any and all claims resulting from the accident in which the plaintiffs were injured. As appears above, section 2(c) of the Act provides that a release 'does not discharge any of the other tortfeasors from liability for the injury or wrongful death *unless its terms so provide.'* The question for decision is whether the releases given by the plaintiffs satisfied the condition, viz, 'unless its terms so provide.'

"The plaintiffs contend that the Act requires a release to name, or otherwise specifically identify, another tortfeasor in order to discharge that tortfeasor from liability. They say that the inclusion of general language such as 'all other persons, firms, and corporations' is not effective to release persons other than the tortfeasor or tortfeasors who specifically contract for the release." (Emphasis added.) 77 Ill.Dec. at 740, 461 N.E.2d at 363.

---

**23.** This is the same conclusion which the federal courts reached in the Wyoming case of *Union Pacific Ry. Co. v. Artist,* supra, 91 years ago.

After noting that there were cases to the contrary, the Illinois court observed that a purpose of the uniform act was to abrogate the common-law rule that the release of one tortfeasor was a release of all tortfeasors and that if literal effect were given to every use of a general release form " * * * and 'all other persons, firms, and corporations' * * * were to be discharged, the purpose of the Act would be thwarted by the unintended release of persons who were strangers to the release contract." 77 Ill.Dec. at 741, 461 N.E.2d at 364.

The court went on to say:

"The legislature intended to abolish the common law rule that produced an involuntary discharge of joint tortfeasors. Section 2(c) states that a release will not operate to 'discharge any of the other tortfeasors from liability for the injury * * *.' We do not consider that the modifying language that follows, i.e., 'unless its terms so provide,' should be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms. The legislature surely was aware of the criticism that the common law rule often operated to violate the intentions of persons giving releases. We consider that the legislature's intendment was that under section 2(c) a release was not to discharge 'other tortfeasors' from liability unless they were designated by name or otherwise specifically identified." 77 Ill.Dec. at 741, 461 N.E.2d at 364.

Other courts have followed these various opinions. When the issue of releasing successive tortfeasors (as in the case of *Harris v. Grizzle,* supra) was before the Supreme Court of Texas in *McMillen v. Klingensmith,* Tex., 467 S.W.2d 193 (1971), the court said, after examining the common-law rule, the statutes abrogating it, and the recent cases:

"The rule [which the court adopts] is a simple one. Unless a party is named in a release, he is not released." 467 S.W.2d at 196.

The Texas Supreme Court observed that this rule avoids many of the problems of the unity-of-release rule and particularly it avoids the necessity of proving by parol evidence the releasor's subjective intent at the time the release was executed.

In the recent Texas decision, *Duncan v. Cessna Aircraft Company,* Tex., 665 S.W.2d 414 (1984), the release discharged the named tortfeasor and

" ' * * * *any other corporations or persons whomsoever responsible therefor, whether named herein or not * * * (emphasis added).' "* 665 S.W.2d at 418.

The court held that tortfeasors who were not specifically named would not be released by this language, stating:

" * * * Our purposes in abolishing the 'unity of release' rule and requiring specific identification of nonsettling tortfeasors were to encourage both partial and full settlements; to avoid unfairly depriving injured Texas residents of their full satisfactions; to avoid providing an incentive to tortfeasors to delay or to stay out of early settlement negotiations; and to ensure that Texas claimants do not inadvertently lose their valuable rights against unnamed and perhaps unknown tortfeasors by settling with only one of the wrongdoers. See *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 807–08 (Tex.1980); *McMillen v. Klingensmith,* 467 S.W.2d at 195–96. To effectuate these policies, we must narrowly construe general, categorical release clauses. A nonsettling tortfeasor should not fortuitously escape compensating his Texas victim simply because of settlement arrangements that did not encompass him or his conduct and to which he contributed nothing. If Cessna obtains the benefit of the *Duncan* release, then the policies underlying *McMillen* will obviously be frustrated."

In *Rosano v. Lustgarten,* 54 A.D.2d 758, 387 N.Y.S.2d 886 (1976), where plaintiff was struck with a golf ball and thereafter released the defendant who struck him—such release being by means of an instrument containing the "all other persons,

firms or corporations" language which is contained in the release executed by Mr. Bjork in the appeal at bar—the New York Supreme Court held that the release was properly modified to reflect the true intent of the parties which was to release only the named tortfeasor. Accord *Sage v. Hale,* N.Y., 75 Misc.2d 256, 347 N.Y.S.2d 416 (1973).

In *Robertson v. McCarte,* 13 Mass.App. 441, 433 N.E.2d 1262 (1982), the Appeals Court of Massachusetts considered an identical statute and a release which contained the same broad language which concerns us here. One tortfeasor was released, unidentified alleged tortfeasors were claiming the benefit of the discharge, and the court held that the effect of the statute (identical with our § 1–1–113(a)(i), including the "unless its terms so provide" language) is that a release or covenant not to sue given in good faith to one of a number of tortfeasors does not include those not named in the release or covenant.

### Conclusion

 The question to be answered, then, in the case at bar is:

Given the language of the release and the provisions of Wyoming's Right to Contribution Among Joint Tortfeasors statutes, what was the intent of the parties when they executed the release in issue here with reference to the unnamed tortfeasors?

Without the language,

" * * * all other persons, firms or corporations liable or who might be claimed to be liable * * * from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever * * *,"

the appellees would not have been discharged because § 1–1–113(a)(i) so provides. Paraphrased, it says that when a release is given in good faith [24] to one of two or more tortfeasors, it does not discharge the other tortfeasors—"unless its terms so provide." Whether the "terms so

provide"—that is, whether the "all other persons" language will include the appellees—is a question of intent. *Coulter, Inc. v. Allen,* supra; *Amoco Production Company v. Stauffer Chemical Company,* supra; *Harris v. Grizzle,* supra; *Natrona Power Co. v. Clark,* supra. Viewing a release instrument as a contract, as we said we must do in *Coulter, Inc. v. Allen,* supra, quoting *Amoco Production Company v. Stauffer Chemical Company,* supra, we must ascertain the intention of the parties by first looking within the four corners of the instrument—which, in this appeal, includes both the contract and the statutes— in the hope that we will find the relevant writings free of ambiguity. If this is possible, we need only look to the plain meaning of the words in our effort to ferret out the intention of the parties. If, however, the language is not clear and is ambiguous— i.e., if its meaning is obscure because of indefiniteness of expression or because a double meaning is present, *Coulter, Inc. v. Allen,* supra—then applicable rules of contract interpretation must be applied in order that intention may be ascertained. If necessary, resort to extrinsic evidence may be had. *Coulter, Inc. v. Allen,* supra; *Amoco Production Company v. Stauffer Chemical Company,* supra; *Harris v. Grizzle,* supra. Whether ambiguity exists is a question of law. (See quotations supra from the *Coulter* opinion.) When the broad language of the release and the contribution statutes are considered as constituting the entire agreement, we hold the agreement to be ambiguous.

In the case which is here on appeal, the issue of release-contract ambiguity must be settled by viewing the question in an historical setting. This is so because it is the court's duty to undertake to discover what evil the legislature sought to remedy through the Right to Contribution Among Joint Tortfeasors legislation. In our pursuit of this purpose, we are mindful of the fact that, in too many instances, the common-law-release rule has not served to fulfill the purpose of the settling parties for

---

**24.** There is no good-faith issue in this appeal.

the reason that, even though the parties may not have so intended, its effect has been to extinguish the plaintiff's cause of action before full compensation was received. *Whitt v. Hutchison,* supra; Prosser, *Joint Torts and Several Liability,* 25 Cal.L.Rev. 413 (1937). The English rule made it difficult to settle with several persons who were jointly liable. Prosser, supra. The effect of the rule was to compel the plaintiff to forego any opportunity of obtaining that which was available from one defendant—although incomplete and inadequate compensation—without giving up his cause of action against other tortfeasors. Prosser, supra.

In their effort to alleviate these unjust consequences, it became the policy of the courts to encourage settlement and, to this end, to avoid the English rule whenever possible. Some courts recognized an accompanying oral agreement to the effect that the release will not discharge the remaining tortfeasors if the oral agreement so provided. Other courts found ways to hold that the instruments in issue were covenants not to sue rather than releases, in order to take advantage of a rule which permits the plaintiff to agree not to enforce his right of action in lieu of surrendering it. *Natrona Power Co. v. Clark,* supra; *Gilbert v. Finch,* 173 N.Y. 455, 66 N.E. 133 (1903); Prosser, supra. Courts have looked at the composition of the instrument in an effort to avoid the English rule and have held that, in ascertaining the intent of the releasor, where the release is structured so that particular words precede general recitals—as in the case at bar—the release will be restricted to the matters particularly recited. 66 Am.Jur.2d Release § 31, citing *Texas and Pacific Ry. Co. v. Dashiell,* 198 U.S. 521, 25 S.Ct. 737, 49 L.Ed. 1150 (1905); *Union Pacific Ry. Co. v. Artist,* supra; *Reggio v. Warren,* 207 Mass. 525, 93 N.E. 805 (1911); *Williams v. Riley,* Mo.App., 243 S.W.2d 122 (1951); *Grumley v. Webb,* 44 Mo. 444 (1869); *Kent v. Fair,* 392 Pa. 272, 140 A.2d 445 (1958); *Quebe v. Gulf, C. & S.F. Ry. Co.,* 98 Tex. 6, 81 S.W. 20 (1904). Legal scholars have observed that, unless the intention is clear and compensa-

tion has been fully paid, a release should not be held to absolve strangers to the instrument. Cooley, Law of Torts § 40 (1932); 1 Harper and James, Law of Torts § 10.1, pp. 711–712 (1956); Legislation and Administration, *Torts, Tort-Feasors—Release of One Tort-Feasor Not a Release of All Tort-Feasors Who May Be Liable for the Same Tort,* 33 Notre Dame Law 291 (1958); Recent Cases, *Unqualified Release of One Concurrent Tort Feasor Acts as Release for All,* 18 U.Cin.L.Rev. 378 (1949); Notes, *Joint Tort-Feasors—Release of One Joint Tort-Feasor as a Bar to Right of Action Against Others—Satisfaction—Judgments,* 22 Minn.L.Rev. 692 (1938).

In an effort to overcome the harsh effects of the common law, states have passed statutes, among which are the Uniform Contribution Among Joint Tortfeasors acts. (Wyoming's version is §§ 1–1–110 through 1–1–114, W.S.1977.) As has been noted, these statutes hold that a release of one joint tortfeasor will no longer release other tortfeasors unless the "terms" of the release so provide. Section 1–1–113(a)(i). In the instant case, there is a "term" which must be interpreted—namely, the purported release of not only the specifically identified releasees, but

" * * * all other persons, firms or corporations liable or who might be claimed to be liable * * *."

The presence of this phrase raises the question which asks whether it was intended by these parties to include the appellees.

By reason of the above considerations, we are brought to these conclusions:

▮ The thrust of the public policy announced in § 1–1–113(a)(ii) is to retain the liability of tortfeasors, thus abrogating the common-law release rule. Therefore the phrase "unless its terms so provide" should be narrowly construed. *Beck v. Cianchetti,* supra. To permit discharge of noncontributing tortfeasors where a plaintiff has received only partial compensation, based upon broad, general language which does not identify the tortfeasors, effectively perpetuates the English rule in contra-

vention of the legislature's intention, *Beck v. Cianchetti,* supra. The phrase "unless its terms so provide" (§ 1–1–113(a)(i)) compels the releasor to name or otherwise specifically identify the released tortfeasors in order that the intent of the parties be fulfilled. *Beck v. Cianchetti,* supra. These resolutions are fortified, not only by *Beck v. Cianchetti,* but by other well-reasoned opinions. See *Alaska Airlines, Inc. v. Sweat,* supra; *Young v. State,* supra; *Alsup v. Firestone Tire & Rubber Company,* supra; *Robertson v. McCarte,* supra; *Duncan v. Cessna Aircraft Company,* supra; *McMillen v. Klingensmith,* supra.

Such a rule will most nearly assure that courts will be able to identify the intention of the parties with certainty, and it will have the effect of eliminating the ambiguity factor which, without the rule, will forever plague release agreements in tort actions.

This holding effectively obviates the necessity of resorting to the *Harris v. Grizzle* rule which sanctions the taking of testimony to ascertain whether or not the parties intended that tortfeasors not named in a release should be discharged through the instrument's general provisions.

Reversed.

ROONEY, Justice, dissenting, with whom BROWN, Justice, joins.

The majority opinion correctly states the well-recognized common law relative to release of a joint tortfeasor; i.e., the release of one joint tortfeasor releases all. It correctly refers to the change in common law in Wyoming through the adoption of § 1–1–113, W.S.1977,[1] a version of the Uniform Contribution Among Tortfeasors Act. And it correctly recognizes (1) that the release

should be construed and interpreted to ascertain the intention of the parties, and (2) that this statute should be construed and interpreted to ascertain the intention of the legislature.

However, in its lengthy recital, the majority opinion fails to apply our well-recognized rules of construction to § 1–1–113 and to the release with which we are concerned in this case.[2] It errs in finding ambiguity in § 1–1–113. It errs in finding ambiguity in the release. And it errs in finding ambiguity in the result when the two are read together. It errs in undertaking to legislate into § 1–1–113, the words "unless the other tortfeasors to be released are specifically identified" in lieu of the words "unless its terms so provide" as used by the legislature.

The majority opinion jumps from the premise that § 1–1–113 is designed to modify the common law to the conclusion that such modification must be intended to go much further than the limiting language used by the legislature, such language being plain, simple and easily understood in directing that the release of one tortfeasor does not release others "unless its terms so provide." It would have been easy for the legislature to have said so if it intended to restrict the application of a release to those specifically named therein. It could have said so in so many words, but it did not. It opted to have the release apply to those as provided by the release terms. Our legislature expressly provided that a release of one tortfeasor does not release other tortfeasors "unless its terms so provide." The plain and ordinary meaning of the language permits the terms of the release to provide discharge from liability to a specifically designated person or persons or orga-

---

1. Section 1–1–113, W.S.1977, provides:

 "(a) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

 "(i) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to

the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

 "(ii) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

2. The release is quoted in fn. 2 of the majority opinion.

nization or organizations, or to "all other persons, firms or corporations liable or who might be claimed to be liable" as done in this release.

The contrary holding of the majority opinion is not in accordance with precedent established by this court:

"* * * [T]he intention and meaning of the legislature must be determined from the language of the statute itself and not from conjecture aliunde. * * * " *Mahoney v. L.L. Sheep Company*, 79 Wyo. 293, 333 P.2d 712, 715 (1958).

"* * * [C]ourts will not usurp the power of the legislature by deciding what should have been said * * *." *Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723, 725 (1959), citing *State v. Hungary*, 75 Wyo. 423, 296 P.2d 506 (1956); and *State ex rel. Board of Com'rs of Laramie County v. Wright*, 62 Wyo. 112, 163 P.2d 190 (1945).

"* * * [C]ourts cannot supply omissions in a statute and will not read into a statute exceptions not made by the legislature. [Citations.]

"* * * [I]t is a universal rule that courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. * * *

"* * * [I]t is our duty to construe and enforce the law as enacted by the legislature, and not to make laws." *Lo Sasso v. Braun*, Wyo., 386 P.2d 630, 631, 632 (1963).

"* * * Intent must be found in the language of the statute itself. [Citation.] Where the language of a statute is plain and unambiguous and conveys clear and definite meaning, there is no occasion for resorting to rules of statutory construction; and the court has no right to look for and impose another meaning. [Citation.] The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. [Citation.] Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its [sic] express provisions. [Citation to *Lo Sasso v. Braun*, supra.]

Courts will not usurp the power of the legislature by deciding what should have been said. [Citation to *Barber v. State Highway Commission*, supra.] * * * " *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174, 1184, reh. denied 627 P.2d 163 ([Wyo]. 1981).

"* * * First off, it is a well-established principle that in construing a legislative enactment we must, if possible, ascertain the intent of the legislature from the wording of the statute. * * * Also, words utilized in the statute are to be given their plain and ordinary meaning unless otherwise indicated. * * * " *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681, 684 (1982).

"* * * We are guided by the principle that the court may not construe a statute in such a manner as will enlarge, stretch, expand or extend it to matters not falling within its express provisions. [Citations, including *LoSasso v. Braun*, supra.] It is our duty to ascertain the intention of the legislature as completely as possible from the language used in the statute itself. [Citations, including *Wyoming State Department of Education v. Barber*, supra.] * * * " *State Department of Revenue and Taxation, Motor Vehicle Division v. Andrews*, Wyo., 671 P.2d 1239, 1246 (1983).

Our legislature has expressly provided that a release of one tortfeasor does not release other tortfeasors "unless its terms so provide." The language should not be "enlarged" or "extended" or interpreted so as to read into it that which is not there, or to refer to that not "falling within its express provisions." The language of the statute is plain and clear. It is not ambiguous. It is unnecessary to determine its meaning "from conjecture aliunde." We should acknowledge the integrity and intelligence of the legislature and assume it would have so provided if it intended the result as legislated by the majority opinion.

Likewise, the language of the release does not require interpretation or construction. It is not ambiguous. It is simple and

easily understood. It would be difficult to state more clearly the concept that every person or organization is released from any and all liability resulting from the accident and that the release was made voluntarily with such being fully understood.

The majority opinion sets forth the basic rules for construing or interpreting a contract by quoting the following from *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980):

> "Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citation.] If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction is done by the court as a matter of law. [Citations.]
>
> "If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression or because a double meaning is present.' [Citation.] Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]
>
> " * * * Whether ambiguity exists is a question of law. * * * "

The release was signed with full knowledge of its contents. It recites tht its terms

> " * * * have been completely read and are fully understood and voluntarily accepted * * * for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

There is no ambiguity in either the statute or the release. The language is clear and plain in both of them. The expression is definite in both. The meaning is not obscure in either of them. There is not a double meaning in either of them. But the majority opinion attributes ambiguity to them *when considered together*. This cannot be. One cannot put two elephants together and have them be a donkey. The statute is clear and plain. The release is clear and plain. There is no ambiguity when they are read together.

The majority opinion quotes from and refers to nine cases from six other jurisdictions to support the contention that, under the Uniform Contributions Among Tortfeasors Act, a release which recites a discharge of all others liable or potentially liable for damages, etc. is effective only to discharge those specifically named in the release. The Uniform Contributions Among Tortfeasors Act was not involved in three of these cases: *Young v. State*, Alaska, 455 P.2d 889 (1969), was decided before Alaska adopted the Act; *McMillen v. Klingensmith*, Tex., 467 S.W.2d 193 (1971); and *Duncan v. Cessna Aircraft Company*, Tex., 665 S.W.2d 414 (1984). The two New York cases, *Sage v. Hale*, 75 Misc.2d 256, 347 N.Y.S.2d 416 (1973), and *Rosano v. Lustgarten*, 54 A.D.2d 758, 387 N.Y.S.2d 886 (1976), are not only opinions from the general trial court of Suffolk County (one concerned an appeal from an inferior court) but concern a General Obligations Statute, which provides that release of one joint tortfeasor does not release others "unless its terms *expressly* so provide" (emphasis added). It is noteworthy that our legislature chose to enact the Uniform Contribution Among Tortfeasors Act rather than the General Obligations Act which was preferred by some other states. The Wyoming choice resulted in an enactment in which the "unless" clause did not include the word "expressly." Alaska had adopted the Uniform Contributions Among Tortfeasors Act before the decision in *Alaska Airlines, Inc. v. Sweat*, Alaska, 568 P.2d 916 (1977), a three-to-two decision, but the covenant not to sue construed in that case specifically stated that Alaska Airlines, Inc. was not discharged. The three remaining cases, *Beck v. Cianchetti*, 1 Ohio St.3d 231,

439 N.E.2d 417 (1982), a five-to-two decision, *Robertson v. McCarte*, 13 Mass.App. 441, 433 N.E.2d 1262 (1982), and *Alsup v. Firestone Tire & Rubber Company*, 101 Ill.2d 196, 77 Ill.Dec. 738, 461 N.E.2d 361 (1984), a five-to-two decision, do involve the Uniform Contributions Among Tortfeasors Act and releases similar to the one in this case. These three cases came out about the same as the majority opinion in this case, but neither these three cases nor the others referred to in the majority opinion designate wherein there is ambiguity in the statute, and none of them address the impropriety of judicial legislation in arriving at their conclusions. The dissent of Chief Justice Ryan, joined by Justice Underwood, in *Alsup v. Firestone Tire & Rubber Company*, supra, reflects the comparative holding of the several jurisdictions:

"I do not believe that in order to discharge other tortfeasors they must be designated by name or be otherwise specifically identified in the release. This is not what section 2(c) of the Contribution Among Joint Tortfeasors Act (Ill.Rev. Stat.1979, ch. 70, par. 302(c)) provides. That section requires only that a release given to a tortfeasor does not discharge any other tortfeasor 'unless its terms so provide * * *.' The limitation of that statute, applied to the facts of this case, means only that the release given by plaintiffs Alsup to tortfeasor Williams and his parents will not release anyone else by operation of law. That is, by virtue of the statute, the common law principle that the release of one joint tortfeasor releases all no longer applies. But under the statute, if the terms of the release provide that others than the specific tortfeasor to whom the release is given are released, the release operates to release from liability more than just the one to whom the release is given. Nothing in the statute requires that the others released be identified by name or otherwise specifically identified. In this case, the release ran to the named individuals 'and all other persons, firms and corporations both known and unknown.' Thus, the release did provide that it was to release others than those to whom it was given. Nothing in the statute prevents the giving of such a general release. I shall discuss this further later in this dissent.

"A majority of the jurisdictions that have considered the question now before this court have reached a result contrary to that reached in the majority opinion. In those cases, general releases similar to that which we are considering here were held to be effective. The provisions of the statutes of those jurisdictions which provided that a release of one joint tortfeasor does not release other joint tortfeasors *unless the release so provides* were held not to require the other tortfeasors to be named or specifically identified. (See *Johnson v. City of Las Cruces* (1974), 86 N.M. 196, 521 P.2d 1037; *Battle v. Clanton* (1975), 27 N.C.App. 616, 220 S.E.2d 97; *Peters v. Butler* (1969), 253 Md. 7, 251 A.2d 600; *Hasselrode v. Gnagey* (1961), 404 Pa. 549, 172 A.2d 764; *Liberty v. J.A. Tobin Construction Co.* (Mo.App.1974), 512 S.W.2d 886.) In a Federal case, *Douglas v. United States Tobacco Co.* (8th Cir. 1982), 670 F.2d 791, 794, the court stated that the majority of cases from other jurisdictions have held that language releasing any and all persons in addition to the named parties satisfies the ' "unless the release so provides" ' provision of the uniform act. In addition to *Peters v. Butler, Johnson v. City of Las Cruces,* and *Hassesrode [sic] v. Gnagey,* cited above, the court in *Douglas* cites *Morison v. General Motors Corp.* (5th Cir. 1970), 428 F.2d 952; *Doganieri v. United States* (N.D.W.Va.1981), 520 F.Supp. 1093; *Stefan v. Chrysler Corp.* (D.Md. 1979), 472 F.Supp. 262, aff'd (4th Cir. 1980), 622 F.2d 587; *Fuls v. Shastina Properties, Inc.* (N.D.Cal.1978), 448 F.Supp. 983; *Bonar v. Hopkins* (W.D.Pa. 1969), 311 F.Supp. 130, aff'd (3rd Cir. 1970), 423 F.2d 1361, and *Dorenzo v. General Motors Corp.* (E.D.Pa.1971), 334 F.Supp. 1155." 77 Ill.Dec. at 742, 461 N.E.2d at 365.

The Wyoming cases cited and quoted from in the majority opinion do not sustain the conclusion there reached. The language quoted from *Union Pacific Railway Co. v. Artist,* 60 F. 365 (8th Cir.1894), decided before adoption of § 1–1–113, W.S. 1977, refers to a release given by Artist and the issue has to do with the scope of it as it pertains to him and not as it pertains to release of others. *Harris v. Grizzle,* Wyo., 599 P.2d 580 (1979), decided after adoption of § 1–1–113, concerned *successive* tortfeasors, but more important to its lack of pertinency to this case is the fact that the release specifically named the parties to be discharged from liability and did not purport to release, as third-party beneficiaries, "all other persons, firms or corporations liable or who might be claimed to be liable," as here. *Natrona Power Company v. Clark,* 31 Wyo. 284, 225 P. 586 (1924), decided before adoption of § 1–1–113, held only that a covenant not to sue designated persons or organizations was not a release which would discharge other tortfeasors from liability. *Coulter, Inc. v. Allen,* Wyo., 624 P.2d 1199 (1981), decided after adoption of § 1–1–113, also, as in *Union Pacific Railway Co. v. Artist,* supra, involved the scope of a release as it pertained to the one receiving it and not to other persons or organizations.

I would affirm.